### In re DAUGHERTY COAL COMPANY, INC.

**Thomas H. FLUHARTY, as Trustee of the Bankruptcy Estate of Daugherty Coal Company, Inc., Plaintiff,**

v.

**WOOD PRODUCTS, INC., Defendant.**

**Civ. A. No. 92–0037–E.**

United States District Court, N.D. West Virginia.

Aug. 31, 1992.

Evans L. King, Jr., Thomas Fluharty, Clarksburg, W.Va., for plaintiff.

Leo Wm. Dunn, Jr., Greenbelt, Md., Shelia Kae Williams, Kingwood, W.Va., for defendant.

## ORDER

MAXWELL, Chief Judge.

On August 1, 1991 the Bankruptcy Court for the Northern District of West Virginia held an adversarial hearing following which secured liens of Defendant Wood Products, Inc. ("Appellant"), as well as a secured lien of Royal Tippling, in the property of Debtor Daugherty Coal Company ("Appellee") were equitably subordinated pursuant to 11 U.S.C. § 510(c) (1988). Appellant filed a timely notice of appeal, in which Royal Tippling did not apparently join, and the parties have designated the record for review. This Court has examined the record on appeal, including the transcript of the August 1, 1991 hearing, the relevant exhibits, and the parties' briefs, and is of the opinion that this appeal is ready for disposition by the Court.

■ Pursuant to Bankruptcy Rule 8013, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Special deference is due determinations of fact based solely on oral testimony, which depend largely upon the credibility of the witnesses. *See Brady v. Thurston Motor Lines*, 726 F.2d 136, 144 (4th Cir.), *cert. denied*, 469 U.S. 827, 105 S.Ct. 110, 83 L.Ed.2d 53 (1984) (citing 9 Wright & Miller, *Federal Practice and Procedure* § 2586 at 737 (1971)); *Bonds v. Mortensen and Lange*, 717 F.2d 123, 125 (4th Cir.1983). To overturn a finding of fact, this Court must have "a firm and definite conviction that a mistake has been committed...." *Id.* Questions of law are reviewed *de novo*. *E.g. In re Gustafson*, 111 B.R. 282 (Bankr. 9th Cir.1990).

The facts applicable to this appeal may be briefly summarized as follows. Appellee is a closely-held corporation whose stock is owned in equal shares by Max Messenger, Elmer C. Grimm, Jr., and Howard Parsons. Messenger was the President of Appellee during all periods relevant to this dispute. Grimm was Secretary/Treasurer until August 1985, after which he was no longer employed by Appellee. Parsons was Vice President until September 1987, when he terminated his employment. All continued to be the sole stockholders in Appellee. Beginning in 1985, Appellee suffered severe economic hardship during which time it lost a great deal of money. By 1989, Appellee conducted very little business, and creditors filed an involuntary petition against Appellee on May 8, 1990.

Appellant is also a closely-held corporation, whose stock is owned entirely by Max

Messenger, his wife, and his two sons. Messenger was the primary shareholder, sole active employee, and (apparently) officer, of Appellant.

Appellant began loaning substantial amounts of money to Appellee in August 1986. Unsecured promissory notes evidenced these debts. On April 30, 1987 Appellee granted Appellant a security interest in real property owned by Appellee in exchange for a demand note and deed of trust in the amount of $198,200.00. The Bankruptcy Court found that, at this time, Appellee owed Appellant approximately $237,565.00. Appellee auctioned a large amount of its equipment the following month.

Appellant subsequently advanced more funds to Appellee, including $60,000.00 on January 11, 1988. This debt was secured by a security interest in a piece of heavy equipment. This equipment had previously been pledged as security for a bank loan. Royal Tippling, Inc., a closely-held corporation owned by Messenger and his two sons, supposedly took possession of the equipment in June 1988 in exchange for forgiveness of a substantial debt owed it by Appellee and assumption of the bank debt. However, no bill of sale was prepared, and Appellee continued to exercise apparent ownership and control of the equipment.

The final transaction material to this dispute was consummated on June 9, 1988 when Appellee granted Appellant a security interest in all real property owned by Appellee in exchange for a promissory note in the amount of $724,882.42. This note included the prior amount advanced on April 30, 1987, which had not yet been paid to Appellee.

Appellee's trustee in bankruptcy moved to have the April 30, 1987 and June 9, 1988 security interests subordinated pursuant to § 510(c)[1] of the Bankruptcy Code. The Bankruptcy Court subordinated the liens

and transferred them to Appellee's estate, finding that Appellant had used its insider position to loan money to Appellee while gaining an unfairly advantageous position relative to other creditors. The parties do not contest the facts set forth above. Instead, Appellant raises the following contentions on appeal: 1) The Bankruptcy Court applied the incorrect legal standard regarding the showing necessary to subordinate these transactions; 2) The Bankruptcy Court clearly erred by subordinating the April 30, 1987 transaction; and 3) The Bankruptcy Court clearly erred by subordinating the entire June 8, 1988 transaction.

■ The Bankruptcy Court properly determined the three-factor test for the subordination determination: 1) The claimant must have engaged in inequitable conduct; 2) The claimant must have unfairly profited from the action, or must have placed other creditors at a disadvantage; and 3) Subordination must be consistent with the principles contained in the Bankruptcy Code. *E.g. Matter of Fabricators, Inc.*, 926 F.2d 1458, 1464–65 (5th Cir.1991); *In re Mobile Steel*, 563 F.2d 692, 700 (5th Cir.1977). The trustee/debtor must prove sufficient facts to invalidate the creditor's proof of claims, and the creditor must then come forward with sufficient evidence to demonstrate the good faith and fairness of its actions. *Id.* at 701. The Bankruptcy Court must make specific findings regarding the three factors above. *Fabricators*, 926 F.2d at 1465 (citing *In re Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 212 (5th Cir.1983)).

■ The proof required by the above test varies according to the status of the creditor, and this is the legal point contested in the present appeal. Appellant contends that heightened scrutiny of the fairness of the transactions is required only when the claimant is a fiduciary of the

---

1. § 510. Subordination

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

    (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of

another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

    (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510 (1988).

debtor, and that Appellant was not a fiduciary of Appellee. The Bankruptcy Court held that heightened scrutiny under the first prong of the three-factor test is proper when the claimant is either a fiduciary or an insider of the debtor. The distinction is important. If heightened scrutiny applies, the trustee/debtor must only prove unfairness in the transaction; otherwise, subordination is proper only in cases of fraud, spoliation or overreaching. *In re N & D Properties, Inc.,* 799 F.2d 726, 731 (11th Cir.1986); *Fabricators,* 926 F.2d at 1465; *In re Missionary Baptist Foundation of America, Inc.,* 818 F.2d 1135, 1144 n. 8 (5th Cir.1987) (*"Missionary Baptist II"*).

■ Upon review of the applicable case law, none of which was decided by the United States Court of Appeals for the Fourth Circuit, this Court is absolutely satisfied that insider status, by itself, demands closer scrutiny regarding the fairness of these transactions. Appellant premises its contention that only fiduciaries warrant stricter scrutiny primarily upon a distinction drawn in the *Missionary Baptist II* decision between fiduciaries and insiders. *Id.* at 1144, 1144 n. 8. This Court reads this passage as standing for the proposition that fiduciaries are subject to even stricter scrutiny than are insiders, not that insiders are not subject to close study regarding their transactions with debtors.

More important than this Court's interpretation of the passage from *Missionary Baptist II,* the court which authored the passage has clearly rejected Appellant's argument. Relying on the language upon which Appellant's argument is premised, the Fifth Circuit held:

A claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts. . . . If the claimant is not an insider, then evidence of more egregious conduct such as fraud, spoliation or overreaching is necessary. . . . Accordingly, whether a claimant is an insider of the debtor can be fundamentally important in an equitable subordination case in that it effects [sic] the standard of scrutiny a

court will apply. [Appellant] argues that *Missionary Baptist II* stands for the proposition that strict scrutiny is apposite only to fiduciaries. To the contrary, *Missionary Baptist II* merely states that a finding of inequitable conduct may be different, depending on whether the claimant is an insider or a fiduciary. . . .

*Fabricators,* 926 F.2d at 1465 (citations omitted). The court relied heavily on the *N & D Properties* decision, where it was stated, "The burden and sufficiency of proof required are not uniform in all cases. Where the claimant is an insider or a fiduciary, the trustee bears the burden of presenting material evidence of unfair conduct." *N & D Properties,* 799 F.2d at 731 (relying on *In re Multiponics,* 622 F.2d 709, 714 (5th Cir.1980)) (emphasis added). "If the claimant is not an insider or fiduciary, however, the trustee must prove more egregious conduct. . . ." *Id.* (citations omitted) (emphasis added).

■ Examining *de novo* the Bankruptcy Court's legal conclusion regarding the standards applicable to the present dispute, this court holds that the lower court properly determined the legal standard. Appellant admits, as it must, that it was an insider of Appellee. Reviewing the Bankruptcy Court's determination that Appellant was an "insider" for clear error, *see Fabricators,* 926 F.2d at 1466, this Court is satisfied that Appellant was an insider of Appellee for the purposes of the equitable subordination. Accordingly, this Court must determine whether the lower court clearly erred by finding that Appellant had engaged in unfair conduct and had failed to demonstrate the good faith and fairness of the two transactions in question.

■ As Appellant correctly points out, insider status, by itself, does not justify equitable subordination; the insider must have used its control to its own advantage or to the disadvantage of creditors. *E.g. id.* at 1467. Three general categories of inequitable conduct exist: 1) fraud, illegality, and breach of fiduciary duties; 2) undercapitalization; and 3) use of the debtor as an instrumentality of the claimant. *Id.* This conduct need not be

directly related to the events giving rise to the claim. *Multiponics*, 622 F.2d at 713 (citing *Mobile Steel*, 563 F.2d at 700)). The Bankruptcy Court specifically found that Appellee had presented no arguments that Appellant was merely an alter ego of Messenger. While this determination does not directly implicate the third category of inequitable conduct discussed above, it is apparent from the lower court's decision that Appellee was not deemed to be an instrumentality of Appellant.

Upon review of all matters of record, the Court is satisfied that the first category of inequitable conduct set forth above is inapplicable to the facts of this dispute. Although the findings of the lower court are somewhat vague, the memorandum opinion provides sufficient guidance for review by this Court. The Bankruptcy Court apparently found that Appellant's conduct amounted to an improper attempt to salvage an undercapitalized corporation:

> Daugherty Coal was not undercapitalized in 1985–the undercapitalization was a result of substantial losses in operations.
>
> Wood Products, Inc. contributed substantial amounts of cash to Daugherty Coal to cover the continuing losses.... However, by obtaining a secured position on all the assets of the debtor, Wood Products, Inc. has secured an unfair advantage over the other creditors. The consolidation of the advances by Wood Products, Inc. into a secured loan must, in equity be subordinated. There was not truly a bargaining position with regard to the granting of the security interest. In its financial condition, Daugherty could not have borrowed a similar amount of money from an outside source. *Mobile Steel Co.*, 563 F.2d 692 (5th Cir.1977). Wood Products, Inc. determined that it should be secured, and Daugherty Coal conveyed the security. The deed of trust liens of Wood Products, Inc. will be transferred to the estate and Wood Products, Inc. will have an unsecured claim for the monies advanced.

Memorandum Opinion and Order at 14–15.

Appellant's assignments of error regarding this determination may be summarized as follows: 1) The Bankruptcy Court improperly considered all the transactions in question, rather than independently analyzing each separate transaction; 2) The transactions were fair, not usurious or otherwise overreaching, and motivated by a desire to help Appellee; and 3) The Bankruptcy Court improperly subordinated the entirety of the two liens in question, rather than merely the portion necessary to offset the harm caused by any inequitable conduct. The Court concludes that none of these arguments demonstrate clear error in the Bankruptcy Court's decision.

█ Regarding the first argument proffered by Appellant, the Court is unaware of any authority to support this proposition. More importantly, there is little to recommend this method of analysis. A court sitting in equity should be allowed wide latitude to sift through the arguments and individual facts to examine the heart of the matter. *Multiponics*, 622 F.2d at 714. A method of analysis focusing on discreet, compartmentalized facts, rather than on all facts relevant to the dispute, obviously does not aid the inquiry. Also, this Court does not believe that Appellant's method would change the outcome of this dispute.

█ This Court agrees that the terms of the notes were not usurious or otherwise improper. A review of the record conclusively demonstrates that Appellant and Messenger were motivated by a desire to maintain Appellee as a viable business. The amount of money involved, the generous terms of the agreements, the reduction of corporate salaries, and the absence of anything which could deceive other creditors are all evidence of the benevolent motivations of Appellant and Messenger. However, these considerations simply are not particularly relevant to this dispute. This Court is not concerned with Appellant's motives, it seeks to prevent inequitable treatment of Appellee's other creditors.

█ In its brief, Appellant seeks to characterize the liens as security for future advances of money from Appellant to Appellee. The Bankruptcy Court properly concluded that the liens secured prior,

unsecured "loans". The amount of the liens compared to the amounts of money owed Appellant by Appellee at the time of the liens is circumstantial evidence of this. More importantly, the testimony of Messenger conclusively establishes that the liens secured antecedent debts. During the August 1, 1991 hearing, the following colloquy ensued between counsel for Appellee and Messenger:

Q. And is it fair to say that the exhibit to the [June 9, 1988] Deed of Trust consists of copies of all of the deeds of property and to Daugherty Coal, some of which had even been sold prior to the time of the taking of this Deed of Trust?

A. That's correct.

Q. And was this your effort to secure on behalf of Wood Products all of the debt which you claim to be due from Daugherty Coal to it by all the property of Daugherty Coal that was left?

A. It was probably a reaction to Mr. Grimm selling the plant on June 10th, 1988.

Q. My question was, was it your attempt to secure all the debt to Wood Products?

A. It was my attempt to receive whatever security for Wood Products that Daugherty could furnish, yes.

Q. So I understand the answer to my question is yes?

A. Yes.

Transcript, pp. 53–54.

As the above demonstrates, the relationship of Appellant and Appellee was not the typical borrower-secured lender relationship. The liens were not security for future advances; they were attempts to obtain security for prior, unsecured advances. Appellant's attempts to recharacterize them as something else is simply revisionist history.

■ Undercapitalization is a concept satisfied by the existence of either of two conditions: 1) Insufficient initial capitalization to make a business with the characteristics of the debtor a viable business; or 2) Inadequate capitalization to obtain equivalent advances from an informed outside lender. *N & D Properties*, 799 F.2d at 733;

*Multiponics*, 622 F.2d 709; *Mobile Steel*, 563 F.2d at 703. In these circumstances, courts may ignore the title given a monetary advance by an insider and consider a "loan" as a contribution to debtor's capital. *In re Global Western Development Corp.*, 759 F.2d 724, 729 (9th Cir.1985). The Bankruptcy Court pursued this course of action, finding that, under the second concept of undercapitalization, Appellant made these transactions at a time when Appellee, though sufficiently capitalized initially, had become undercapitalized.

■ The Bankruptcy Court's determination that Appellee was undercapitalized at the time of these transactions is not clearly erroneous. Appellee had negative $1,610,178.00 in retained earnings at the end of calendar year 1986 after having suffered massive losses that year. The retained earnings figure for the end of 1987 is negative $2,037,960.00. In an exchange with counsel for Appellee, Messenger admitted that Appellee was undercapitalized:

Q. The financial condition of Daugherty Coal as of December 31, '86, showed that it was an insolvent corporation at that time.

Why would you continue to put this type of money into Daugherty Coal?

A. Pride, I guess.

. . . .

Q. So were you paying creditors or were you trying to keep the company alive from and at the time you started these advances ob [sic] behalf of Wood Products?

A. Doing both.

Q. Primarily, trying to continue operations?

A. That's right.

Q. So Wood Products was essentially providing working capital. Is that correct?

A. Essentially, yes.

Transcript, pp. 56, 57. Messenger acknowledged that Appellee could not have procured equivalent financing from an informed, outside lender:

Q. At the time Daugherty Coal Company was accepting advances or receiving loan advances from Wood Products starting, according to your ledger sheet, in August of 1986 coming forward, it could have obtained similar credit elsewhere on its own?

A. No, not without my signature.

Q. Without your personal guarantee?

A. That's correct.

Transcript, pp. 55–56.

The existence of this state of affairs could justify the subordination of Appellant's claims. *N & D Properties*, 799 F.2d at 733; *Multiponics*, 622 F.2d at 719–20 (necessity of personal guarantees strong evidence of present undercapitalization). This conclusion becomes compelling when viewed in light of the circumstances of the transactions. Both liens were obtained shortly before liquidations of a substantial portion of Appellee's non-real estate assets; namely, the May 1987 auction of equipment and the June 10, 1988 foreclosure on Appellee's plant. Following the June 9, 1988 lien, Appellant had a security interest in substantially all of Appellee's remaining assets.

In summary, this Court affirms the decision of the Bankruptcy Court in all respects. The transactions in question were not arm's-length business deals; Appellant attempted to salvage Appellee at a time when Appellee was insolvent and unable to otherwise obtain financing. When losses continued to mount and important assets were being depleted, Appellant obtained the security without going through the appropriate formalities. In so doing, Appellant obtained liens covering the only significant assets owned by Appellee and effectively "leap-frogged" over Appellee's other creditors. The advances are most appropriately viewed as an insider's contribution to Appellee's capital. Although this finding could justify subordination of Appellant's claim below the claims of unsecured creditors, *see N & D Properties*, 799 F.2d at 733; *Diasonics, Inc. v. Ingalls*, 121 B.R. 626, 630 (Bankr.N.D.Fla.1990), this Court does not disturb the Bankruptcy Court's determination that Appellee's claims should be equitably subordinated to the level of unsecured creditors. Accordingly, it is

ORDERED that Appellant's request for a hearing be, and the same is hereby, DENIED. It is further

ORDERED that Appellant's appeal of the decision of the Bankruptcy Court following the August 1, 1991 hearing be, and the same is hereby, DENIED. The decision of the Bankruptcy Court is affirmed in all respects, and this action is STRICKEN from the docket of this Court.