**In re: C–4 MEDIA CABLE SOUTH, L.P., Chapter 11 Debtor.**

**C–4 MEDIA CABLE SOUTH, L.P., Plaintiff,**

v.

**REDS T.V. AND CABLE, INC., Maccripine Cable Television, Inc., Pink Hill Cable T.V., Inc., Frank Styers, Defendants.**

**Bankruptcy No. 91–11263–AT. Adv. No. 92–1260.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Dec. 30, 1992.

Robert Lapowsky, Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, PA, Neil D. Goldman, Young, Goldman & Van Beek, Alexandria, VA, for plaintiff.

Robert G. Mayer, Fairfax, VA, for defendants.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This adversary proceeding comes before the court on objections to defendant Frank Styers' proof of claim and debtor's complaint for breach of warranty against defendants. For the reasons stated in this memorandum opinion the court grants judgment in favor of defendants and will allow Styers' proof of claim.

### Findings of Fact

In November 1989 C–4 Media Cable South Limited Partnership ("C–4") entered into a purchase agreement to acquire several cable television systems in eastern North Carolina. As part of the agreement the seller, Frank Styers, acting as principal of the three named corporate defendants, Reds T.V. and Cable, Inc. ("Reds"), Maccripine Cable Television, Inc. ("Maccripine"), and Pink Hill Cable T.V., Inc. ("Pink Hill") (hereafter referred to collectively as "defendants"), entered into a "non-competition

agreement," for which Styers was to receive the sum of $600,000.00.

Several amendments were made to the purchase agreement prior to the closing date. In late December 1989 C–4 and the defendants entered into a Representations and Warranties Escrow Agreement, whereby $200,000.00 of the purchase money relating to the acquisition of the cable systems was placed in escrow by the parties. The purpose of the escrow account, according to the agreement, was:

> [T]o reserve a designated portion of the Purchase Price for a six (6) month period to enable buyer to review the truth and accuracy of the representations and warranties and verify completion of the covenants made by the seller in the Agreement of Purchase.

(Defendant Exhibit 5).

In June 1990 all but $14,000.00 of these funds were returned to the defendants. (Defendant Exhibit 7).

Between the November purchase agreement and the December closing, Carolina Power & Light, a utility company located in several of the communities serviced by Pink Hill, determined that a number of repairs or corrections were required to the cable system. The completion of this work was necessary so that the utility would sign a contract permitting the purchaser to use its utility poles. As a consequence, the parties entered into what has been called the Pole Attachment Escrow Agreement. The arrangement required $60,000.00 of the purchase money to be held in escrow in order to ensure compliance with repairs and corrections requested by the utility company. The entire $60,000.00 was returned to the defendants in March 1990 after the utility company inspected the system and certified that the repairs requested had been made.

Finally, on December 10, 1989, before the pending purchase had gone to settlement, a severe ice storm inflicted heavy damage on portions of the cable systems. As a result, the parties entered into an addendum whereby the purchase price was decreased by $50,000.00 to account for damage inflicted by the storm, and C–4 assumed responsibility for repairing the damage caused by the storm.

The sale was closed on December 20, 1989, and C–4 assumed control of the systems a few days later. At settlement, C–4 paid Styers $300,000.00 representing one half of the sum due on the non-compete agreement. Later, however, when C–4 did not pay the outstanding balance remaining on this obligation, Styers sued C–4 in North Carolina state court. C–4 never appeared in the state court law suit, and Styers was granted default judgment in the amount of $309,205.48. (Defendant Exhibit D–2).

C–4 filed its bankruptcy petition on March 28, 1991, and on April 24, 1991, this court ordered the U.S. Trustee's office to appoint a Chapter 11 Trustee. Subsequently, Styers filed a proof of claim for the amount of his default judgment. First Union National Bank of North Carolina and Kansallis–Osake–Pankki (the "banks") and C–4 filed objections to Styers' claim. On March 25, 1992, the First Amended Plan of Reorganization as proposed by the banks was confirmed.

On May 22, 1992, C–4 filed the instant complaint for damages in the amount of $313,155.00 against Styers and the three cable companies asserting breach of warranties contained in the agreement of sale in that the systems sold to C–4 were not designed, constructed, installed, operated, or maintained in accordance with standards generally accepted in the CATV industry.

*Discussion and Conclusions of Law*

■ Both the banks and C–4 filed objections to Styers' proof of claim. Neither of these two objecting parties are collaterally estopped from filing an objection to Styers' claim, despite Styers' state court default judgment; since the issue of the validity of the claim was not actually litigated in state court the requirements for collateral estoppel are not satisfied. *See Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988); *Rountrey v. Lee (In re Lee),* 90 B.R. 202, 205 (Bankr.E.D.Va.1988). "[A] state court default judgment does not have collateral estoppel effect [in bankruptcy if] … it is not the result of actual litigation." *M & M*

*Transmissions, Inc. v. Raynor (In re Raynor)*, 922 F.2d 1146, 1149 (4th Cir.1991) (citing *Commonwealth of Virginia Commission of Game and Inland Fisheries v. Myers (In re Myers)*, 52 B.R. 901, 903–04 n. 1 (Bankr.E.D.Va.1985)).

■ Under Bankruptcy Rule 3001(f) and 11 U.S.C. § 502(a), a proof of claim constitutes prima facie evidence of the validity of a claim. An objector must overcome the prima facie validity of a claim to shift the burden of production to the party who filed the claim. *California State Bd. of Equalization v. Official Unsecured Creditors Committee (In re Fidelity Holding Company, Ltd.)*, 837 F.2d 696, 698 (5th Cir. 1988). The mere filing of an objection does not satisfy this requirement. *In re Trending Cycles for Commodities Inc.*, 26 B.R. 350, 351 (Bankr.S.D.Fla.1982); *In re Lanza*, 51 B.R. 125, 127 (Bankr.N.J.1985), *reconsideration denied* 55 B.R. 354 (Bankr. N.J.1985).

■ At trial C–4 offered considerable testimony on the defendants' alleged violations of the warranty provisions embodied in the purchase contract. However, there was no evidence presented that Styers' claim based on his state court judgment for the balance due under the non-compete agreement was itself invalid. Since no evidence was offered to rebut the validity of Styers claim, it is valid in bankruptcy and must be allowed.

■ In the complaint for breach of warranty, C–4 appears to be asking the court to invoke the equitable doctrine of recoupment.[1] *See, e.g., Holford v. Powers (In re Holford)*, 896 F.2d 176, 178 (5th Cir.1990) (citing Lawrence P. King, *Collier on Bankruptcy*, ¶ 553.03 (15th ed. 1984)); *see also Ashland Petroleum Company v. Appel, Trustee (In re B & L Oil Co.,)* 782 F.2d 155 (10th Cir.1986); *First Nat'l Bank of Louisville v. Master Auto Service Corp.*, 693 F.2d 308 (4th Cir.1982); *In re Ruiz*, 146 B.R. 877 (Bankr.S.D.Fla.1992). In fact, this was the focus of the evidence presented by C–4. The court assumes this is an alternative argument since recoupment against Styers presupposes Styers' claim is valid.

While there is persuasive evidence that violations currently exist in the cable systems, C–4 has not proven them attributable to the defendants. The evidence indicates that on December 10, 1989, an ice storm severely damaged several of the systems. C–4 knew of the storm, and after negotiations the purchase price was decreased.

Furthermore, the $60,000.00 Pole Attachment Escrow Agreement, insuring that repairs and corrections to utility poles were performed to the satisfaction of the utility company, was fully refunded to the sellers. Moreover, all but $14,000.00 of the original $200,000.00 Representation and Warranties Escrow was refunded to Styers by C–4.

■ Given the evidence presented, the court finds that C–4 has failed to prove any breach of warranty sufficient to invoke the doctrine of recoupment or to justify any other recovery against the defendants. Any other conclusion would require the court to speculate on the time and cause of particular violations.[2]

---

1. Used in the sense of keeping back something which is due because of an equitable reason to withhold it. At common law the term "recoupment" described a claim that defendant could assert against plaintiff only if it arose from the same transaction as plaintiff's claim. *See, e.g., Ferris v. Haymore*, 967 F.2d 946, 958–59 n. 1 (4th Cir.1992) (Widener, J., concurring in part and dissenting in part).

2. Although a complaint for equitable subordination is not before the court, C–4 has attempted to frame this case as one warranting the application of equitable subordination pursuant to 11 U.S.C. § 510(c). However, in order to invoke equitable subordination some inequitable conduct must be shown. *See, e.g., Benjamin v.*

*Diamond, Trustee (In re Mobile Steel)*, 563 F.2d 692, 700 (5th Cir.1977); *Fluharty v. Wood Products, Inc. (In re Daugherty Coal Co.)*, 144 B.R. 320, 323 (N.D.W.Va.1992).

Similar to other forms of equitable relief, equitable subordination in bankruptcy is not to be invoked lightly. *Claxton v. Bartl, Trustee (In re Claxton)*, 76 B.R. 539, 546 (Bankr.E.D.Va. 1987). Some degree of inequitable conduct must be shown, and C–4 has offered no evidence of such conduct. C–4 did not demonstrate that Styers misrepresented the product which was offered for sale, nor does any indicia of bad-faith dealing appear in the record. Rather, the sale price was determined by arms-length negotiations. In addition, escrow accounts

Separate orders will be entered granting judgment for defendants on the complaint and allowing Styers proof of claim.

were established to ensure the quality of the system. In sum, the evidence presented by C–4 falls far short of establishing a claim for equitable subordination.