**In re WIZARD SOFTWARE, INC., Debtor.**

**Bankruptcy No. 93–11937–AB.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Aug. 2, 1995.

**514**

Sally Ann Hostetler, Fairfax, VA, for debtor.

Andrew C. Bisulca, Springfield, VA, for creditor Lamont, Hanley & Assoc.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the motion of Lamont, Hanley and Associates, Inc. for summary judgment on the reorganized debtor's objection to its $158,820.55 claim. The issue is whether a state court default judgment against the debtor is res judicata as to the amount of the claim.

### Findings of Fact

The debtor filed a voluntary chapter 11 petition in this court on May 5, 1993. A chapter 11 plan was confirmed on May 9, 1995.[1] Prior to the bankruptcy filing, Lamont, Hanley and Associates, Inc. ("Lamont"), a customer of the debtor, obtained a default judgment against the debtor in the Circuit Court of Fairfax County, Virginia on February 5, 1993, in the amount of $139,-930.00 plus interest at 9% per annum from October 29, 1991. Lamont's cause of action was grounded on an alleged breach of contract arising out of two interrelated agreements between Lamont and the debtor for the sale and servicing of computer hardware and software known as "The Collection Wiz-

---

1. Under the terms of the confirmed plan, general unsecured claims are to be paid at 75 cents on the dollar over time.

ard" for use in collecting delinquent accounts. The debtor was served through its registered agent, David A. Lawrence.[2] The debtor failed to file a responsive pleading within the 21–day period provided by Virginia law.[3] After holding a hearing to fix damages, the state court then entered the default judgment. No motion was ever filed by the debtor in the state court to set aside or modify the judgment, nor was an appeal taken. On June 17, 1993, Lamont filed a timely proof of claim in the chapter 11 case in the amount of $158,820.55.[4] The debtor's objection, filed on March 1, 1995, denied that the debtor "has any liability on any claim" by Lamont, or, in the alternative, asserted that "the actual damages provable by [Lamont] are significantly less than the amount of the default judgment obtained."[5] Debtor's Obj. ¶ 5. The creditor has now moved for summary judgment.

### Conclusions of Law

This court has jurisdiction of this controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. 157(b)(2)(B).[6]

Lamont argues, in essence, that the full faith and credit statute, 28 U.S.C. § 1738, and the principles of res judicata and collateral estoppel require this court to accept the state court default judgment as establishing the validity and amount of its claim. The debtor counters that in the Fourth Circuit a default judgment has no preclusive effect in bankruptcy and that, to the extent the judgment was for an amount far in excess of any amount to which Lamont was entitled, allowing the claim would force the debtor to incur an obligation for less than reasonably equivalent value, contrary to § 548 of the Bankruptcy Code.[7]

### A.

▮▮▮▮ Turning first to the question of preclusion, it is essential to distinguish between res judicata and collateral estoppel. Res judicata, commonly referred to as claim preclusion, prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties regardless of whether they were asserted or determined in the prior proceeding. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). Collateral estoppel, commonly referred to as issue preclusion, bars relitigation of issues actually litigated and necessarily decided between the same parties in a different cause of action. *Id.* at 139, n. 10, 99 S.Ct. at 2213, n. 10.

▮▮▮▮ To evaluate the preclusive effect of a state court judgment, a federal court must apply the preclusion law of the state in which the judgment was rendered. *See*, 28 U.S.C. § 1738;[8] *Hildebrand v. Kugler (In re Kugler)*, 170 B.R. 291 (Bankr.E.D.Va.1994) (Bostetter, C.J.). With respect specifically to collateral estoppel, the Virginia rule is that

---

2. Mr. Lawrence was an attorney in the law firm that is representing the debtor in this case.

3. Rule 3:5, Rules of the Supreme Court of Virginia. No reason has been proffered for the debtor's failure to respond to the lawsuit.

4. The judgment principal plus interest to the date of the chapter 11 filing.

5. The objection was not signed by counsel.

6. An objection to a claim is a contested matter governed by Fed.R.Bankr.P. 9014, unless it is joined with a demand for relief of the kind specified in Fed.R.Bankr.P. 7001, in which event it becomes an adversary proceeding. Fed. R.Bankr.P. 3007 and Advisory Committee Note.

7. This theory is not set forth in the objection to the claim but was raised for the first time in the

debtor's response to Lamont's summary judgment motion.

8. "The records and judicial proceedings of any court of any ... State, Territory or Possession ... shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. Such ... records and judicial proceedings ..., so authenticated, *shall have the same full faith and credit in every court within the United States* and its Territories and Possession *as they have by law or usage in the courts of such State,* Territory or Possession from which they are taken." (emphasis added).

"collateral estoppel precludes further litigation of an issue in a subsequent proceeding when that issue was actually litigated and its resolution was essential to a valid, final and personal judgment rendered in a prior proceeding." *Id.* at 297. "The requirement that an issue must have been the subject of actual litigation, rather than potential litigation, is one of the features that distinguishes collateral estoppel from res judicata." *Horton v. Morrison,* 248 Va. 304, 306, 448 S.E.2d 629, 631 (1994). The Supreme Court of Virginia has held that default judgments (*i.e.,* judgments entered in response to the lack of responsive pleadings) have no collateral estoppel effect. *Horton, supra,* 248 Va. at 306, 448 S.E.2d at 631 ("we hold that the default judgment cannot be the basis of [a] claim of collateral estoppel"). The Federal rule in this circuit, at least in the context of a bankruptcy dischargeability proceeding, is the same. *M & M Transmissions, Inc. v. Raynor (In re Raynor),* 922 F.2d 1146, 1149 (4th Cir.1991). Since it is undisputed that the debtor did not appear or file responsive pleadings in the state court action, and since the courts of Virginia would not apply the doctrine of collateral estoppel in subsequent litigation based on a default judgment entered in earlier litigation, and since 28 U.S.C. § 1738 requires only that "every court within the United States" give the judicial proceedings of a state court "the same full faith and credit ... as they have by law or usage in the courts of [the] State ... from which they were taken," it necessarily follows that the state court default judgment has no collateral estoppel effect in this court.

 Res judicata is a different matter, however. "The bar of res judicata precludes relitigation of the same cause of action, or any part thereof, which could have been litigated between the same parties and their privies." *Smith v. Ware,* 244 Va. 374, 376, 421 S.E.2d 444 (1992).[9] While no reported

Virginia case appears to have stated in so many words that a default judgment is res judicata, it is clear that under Virginia law a default judgment has in general the same binding effect as a judgment fully litigated on the merits. As explained by the then-Supreme Court of Appeals of Virginia, in refusing, in a collateral proceeding, to set aside a judgment lien even though the defendant was under a disability as a convicted felon at the time the default judgment was entered:

> The principles which upheld the jurisdiction of the courts in all this class of cases is not at all affected by the fact that the judgment is by default. For whether the judgment be the act of the court, or be entered up by the clerk under the statute, the effect is the same. In either case, it is the act of the law, and until reversed by the court which rendered it or by a superior tribunal, it imports absolute verity, and is as effectual and binding as if pronounced upon the merits.

*Neale v. Utz,* 75 Va. (1 Matt.) 480 (1881). In Virginia, all final judgments and decrees remain under the control of the trial court and are subject to being modified, vacated or suspended for 21 days after entry, and no longer. Rule 1:1, Rules of the Supreme Court of Virginia. Virginia law does provide, however, a statutory procedure for setting aside a default judgment outside that period in limited circumstances. Under § 8.01–428(A), Va.Code Ann., a default judgment may be set aside on motion in the trial court which entered it upon a showing of "(i) fraud on the court, (ii) a void judgment, (iii) on proof of an accord and satisfaction." Such a motion, if grounded on fraud on the court, must be brought within two years of the date of the judgment. In addition, Virginia by statute explicitly preserves the inherent right of a court of equity to entertain an independent action "to relieve a party from any

---

9. As explained in *Bates v. Devers,* 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974), Virginia cases have used the term "res judicata" to encompass four different preclusion doctrines, each conceptually distinct: merger, direct estoppel, bar, and collateral estoppel, with "bar" being "the particular preclusive effect commonly meant by the use of the term 'res judicata.'" Some Virginia cases have treated res judicata as distinct from collateral estoppel, *see, e.g. Horton v. Morrison, supra.* In other cases, collateral estoppel has been treated as "a species of res judicata." *Reid v. Ayscue,* 246 Va. 454, 436 S.E.2d 439 (1993). Thus, the term "res judicata" is sometimes, but not consistently, used by Virginia courts in the particular sense used by the United States Supreme Court in *Brown v. Felsen, supra.*

judgment or proceeding, or to grant relief to a defendant not served with process ..., or to set aside a judgment or decree for fraud upon the court." § 8.01–428(D), Va.Code Ann. The Virginia Supreme Court has held, however, that these remedial provisions "must be given a narrow construction because 'judicial proceedings must have a certainty of result, and a high degree of finality must attach to judgments.'" *Charles v. Precision Tune, Inc.,* 243 Va. 313, 317, 414 S.E.2d 831, 833 (1992). The elements that must be established in an independent action to set aside a judgement are:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Id.,* 243 Va. at 317–318, 414 S.E.2d at 833.

■ There can be no doubt that a bankruptcy court has the general powers of a court of equity when passing on objections to claims. *Heiser v. Woodruff,* 327 U.S. 726, 732, 66 S.Ct. 853, 855, 90 L.Ed. 970 (1946) ("a bankruptcy court is also a court of equity, ... and may exercise equity powers in bankruptcy proceedings to set aside fraudulent claims, including a fraudulent judgment where the issue of fraud has not been previously adjudicated.") Accordingly, the Supreme Court has held that a proof of claim based on a judgment

> may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud.

*Id.,* 327 U.S. at 736, 66 S.Ct. at 858. However, the Supreme Court also cautioned:

But it is quite another matter to say that the bankruptcy court may reexamine the issues determined by the judgment itself. It has, from an early date, been held to the contrary.

*Id.* In *Heiser,* the debtor, and subsequently the trustee, had unsuccessfully moved in the trial court to set aside, on the ground that it had been fraudulently procured, a large default judgment against the debtor. Accordingly, a further attack on the claim in the bankruptcy court on the ground that the judgment had been procured by fraud was barred by res judicata. *Id.* at 736, 66 S.Ct. at 857.

■ More recently, the Supreme Court has held that res judicata does not apply in the specific context of dischargeability proceedings. *Brown v. Felsen, supra,* 442 U.S. at 138–139, 99 S.Ct. at 2213.[10] The *Brown* decision is grounded in policy considerations peculiarly applicable to dischargeability litigation, and nothing in the opinion even hints that the Supreme Court intended in any other respect to retreat from the position, taken in the claims context in *Heiser v. Woodruff, supra,* that "we are aware of no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata, which is founded upon the generally recognized public policy that there must be some end to litigation...." 327 U.S. at 733, 66 S.Ct. at 856. Accordingly, even after *Brown,* it appears that res judicata applies to bankruptcy matters that are outside the scope of dischargeability. *See, e.g., In re Grimm,* 168 B.R. 102 (Bankr.E.D.Va.1994); *Kugler, supra,* 170 B.R. at 301, n. 13 (res judicata ordinarily attaches to default judgments); *Credit Alliance Corp. v. Williams,* 851 F.2d 119, 122 (4th Cir.1988) ("The default judgment constitutes a final judgment on the merits, and the principles of res judicata preclude [the guarantor from] raising defenses that he could have raised in the New York action"); *Kelleran v. Andrijevic,* 825 F.2d 692 (2d Cir. 1987), cert. denied 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988) (Bankruptcy court

---

10. The opinion states that collateral estoppel ordinarily would apply, however. 442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10. *See, e.g., Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988) (jury verdict in assault action against debtor precluded debtor from relitigating willful and malicious nature of actions in subsequent bankruptcy dischargeability proceeding).

in passing on objection to claim required under 28 U.S.C. § 1738 to give preclusive effect to state court default judgment); *In re: Bocker,* 123 B.R. 164 (E.D.N.Y.1991) (On objection to claim, chapter 13 debtor bound by state court default judgment despite assertion of usury).

The debtor, however, has cited *C-4 Media Cable South, L.P. v. Reds T.V. and Cable, Inc. (In re C-4 Media Cable South, L.P.),* 150 B.R. 374, 376 (Bankr.E.D.Va.1992) (Tice, J.) for the proposition that a chapter 11 debtor is not barred from objecting to a creditor's claim based on a state court default judgment. In that case the debtor had been sued pre-petition in a North Carolina state court and the creditor, one Frank Styer, obtained a default judgment for $309,205.48. Styer then filed a proof of claim for the amount of his default judgment, and the debtor and two other creditors objected. The bankruptcy court, citing *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988), *Rountrey v. Lee (In re Lee),* 90 B.R. 202 (Bankr. E.D.Va.1988), and *M & M Transmissions, Inc. v. Raynor, supra,* held in passing that none of the objecting parties were collaterally estopped from objecting to the claim, since the "issue of the validity of the claim was not actually litigated in state court." 150 B.R. at 376. The court then went on to hold, however, that the objecting parties, while presenting evidence on the debtor's counterclaim for breach of contract, did not present evidence "that Styers' claim *based on his state court judgment* for the balance due under the noncompete agreement *was itself invalid,*" 150 B.R. at 377 (emphasis added). Since under § 502(a) of the Bankruptcy Code and Fed. R.Bankr.P. 3001(f), a properly filed proof of claim is prima facie evidence of the validity of the claim, and since the objecting parties had failed to present evidence showing that the claim was not valid, the court overruled the objection and allowed the claim.

■ It does not appear that the parties in *C-4 Media Cable South* specifically raised the issue of res judicata as opposed to collateral estoppel or asked the court in that case to focus on the distinction. Additionally, none of the cases cited by the court addresses preclusion in the claims context. *Combs v. Richardson, Lee,* and *M & M Transmissions* all involve issues of dischargeability, not claims allowance. Since res judicata does not apply in dischargeability litigation, the only applicable preclusion doctrine would be collateral estoppel, and collateral estoppel, as noted above, is not implicated by a default judgment. In the claims context, however, the question is not one of collateral estoppel or issue preclusion, but rather res judicata or claim preclusion. A judgment creditor's filing of a proof of claim in bankruptcy does not involve the assertion of a different cause of action (as dischargeability litigation would be, since dischargeability is an issue of Federal law) but simply seeks payment on account of the very cause of action on which the judgment was entered. Since a default judgment is effective as res judicata, it follows that a state court default judgment bars litigation, in the context of an objection to the judgment creditor's claim, of defenses that were available to the debtor at the time the state court judgment was obtained.

■ This is not to say that a bankruptcy court is absolutely bound by a state court default judgment. First, even under 28 U.S.C. § 1738, this court is required to give the state court judgment only such preclusive effect as it would have under state law. As noted above, in Virginia a final default judgment may be set aside where the court which rendered it lacked jurisdiction, where the judgment was obtained by fraud, or where there has been an accord and satisfaction. Second, even apart from such grounds as may be available under applicable state law, *Heiser v. Woodruff, supra,* permits this court independently to determine if "the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party" if those issues have not already been determined by a court of competent jurisdiction. In the absence of such circumstances, however, a claim based on a state court default judgment is entitled to be treated as res judicata of the amount of a creditor's claim.

■ In the present case, whether one applies the Virginia standard for relief from

a default judgment or *Heiser v. Woodruff,* the debtor has shown no grounds for disregarding the state court default judgment. The debtor has not alleged, and there has been no showing, that it was not properly served or that the Fairfax County Circuit Court lacked either in personam or subject-matter jurisdiction. Nor has the debtor alleged or shown fraud, accident or mistake which prevented or hindered it from making its defense in the state court. There has been no allegation or showing of an accord and satisfaction. And finally, there has been no showing that the creditor, in obtaining the default judgment, perpetrated a fraud on the court.

The debtor's only serious contention is that the contract sued upon limited any damages to the amount the customer had paid to the debtor.[11] These are admitted in the state court pleadings to have been only $24,700.00. Accordingly, so the argument goes, a judgment for $139,930.00 is far in excess of anything to which the creditor was entitled, and therefore constituted a fraud on the tribunal. Lamont, however, points to the exception in the contract for "gross negligence" and to the unrebutted allegation in its state court pleading that the debtor had breached the agreement by, among other things, "deliberately configuring the system so as to render it useless to the Plaintiff." Motion for Judgment, ¶ 6. Lamont further alleged in the state court pleading that it was required to spend $90,000.00 to purchase from another vendor a system comparable to the one the debtor had agreed to furnish. ¶ 11.

 The interpretation and enforceability of contract terms, including those limiting damages, is a matter of defense on the merits, and a plaintiff's assertion of a theory of damages in a state court action that would entitle it to recover more, even if that position were erroneous as a matter of law, would not constitute fraud on the tribunal unless the plaintiff knew it had not sustained or was not entitled to such damages. No evidence has been offered by the debtor to suggest that Lamont did not actually suffer the damages claimed or that in effect Lamont pulled the wool over the eyes of the state trial court by deliberately asserting a position that it knew to be without legal or factual justification. While the amount of the judgment may have been erroneous, and while the debtor may very well have prevailed on its damage limitation defense had the case been actually tried, the mere existence of a possibly-meritorious defense is not, standing alone, sufficient grounds for denying res judicata effect to a default judgment.[12]

---

**11.** Agreement dated October 29, 1991, § 5.03 ("Limit of WSI Liability"):

> The liability of WSI in all cases shall be limited to supplying an operational system or correcting any malfunctions in TCW during the warranty period. The financial liability of WSI in all cases shall be limited to refunding the amount paid by USER to WSI for TCW. In no event except gross negligence shall WSI be liable for indirect, incidental or consequential damages, including but not limited to, loss of profits or good will.

Similar language is set forth at § 7.01(b) of the Agreement ("The liability of WSI ... on any claim for damages arising out of this Agreement shall ... not exceed the amount paid to WSI by USER for the purchase price of TCW.")

**12.** The debtor in a supplemental memorandum submitted after argument on the summary judgment motion also argues that the necessary mutuality for application of res judicata is not present, since it is the debtor in possession, not the debtor, that is making the objection, and the debtor in possession and the debtor are different entities, citing *Breeden v. Catron (In re Catron),* 158 B.R. 629 (E.D.Va.1993), *aff'd* 25 F.3d 1038

(4th Cir.1994) (unpublished table decision). The issue in *Catron,* however, involved the question of whether a chapter 11 debtor in possession could assume, as an executory contract, a partnership agreement; the decision simply held that the debtor in possession, for the purpose of determining whether the other parties to the contract could be required to accept performance from a stranger, was treated as a trustee, not as the debtor. *But see, NLRB v. Bildisco and Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984) ("For our purposes, it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing.") The claim asserted here, however, is not a claim against the debtor in possession, as such; it is a claim against the debtor which, if allowed, is entitled to be paid as part of the plan of reorganization. Although a bankruptcy trustee, and, by extension under § 1107(a) of the Bankruptcy Code, a debtor in possession, enjoy certain defenses and avoiding powers not available person-

### B.

The debtor further asserts that to the extent the debtor, whether voluntarily or involuntarily, suffered itself as a result of the default judgment to become obligated to Lamont for an amount in excess of what it actually owed, the incurrence of that obligation is avoidable under § 548 of the Bankruptcy Code. As noted above, this assertion is not set forth in the objection to the proof of claim but was raised for the first time in the debtor's memorandum in opposition to the summary judgment motion.

Section 548 of the Bankruptcy Code provides as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, *or any obligation incurred by the debtor,* that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date such transfer was made or *such obligation was incurred,* or became insolvent as a result of such transfer or obligation.

(emphasis added). The debtor has not brought to the court's attention any reported case which has used § 548 to go behind a judgment, non-collusive and regular on its face, to determine whether the debtor "received less than reasonably equivalent value" for the obligation to pay the judgment. Indeed, there are many classes of judgments— such as personal injury or other tort claims— which, in the nature of things never involve the receipt by the debtor of "reasonably equivalent value." The obligation arising from such a judgment is one intended to compensate the injured party, not to benefit the debtor. The same is true with respect to a damage claim, such as that involved here, for breach of contract. The obligation arising from such a judgment is one imposed by law to make the other party whole, and it

would be nonsensical to speak of such a judgment as providing "value" to the defaulting party. An interpretation of § 548 that would limit judgment claims in bankruptcy only to those the incurrence of which resulted in a benefit to the debtor would result in the disallowance of large numbers of claims routinely allowed and paid in bankruptcy cases and cannot possibly have been the intent of Congress. Whatever may be the applicability of § 548 to collusive or fraudulently-procured judgments or to judgments based on underlying transactions (e.g., a lease on exorbitant terms from a shareholder to his or her closely held corporation) which were entered into for less than reasonably equivalent value, it provides no general basis for a bankruptcy court—based solely on an assertion that the damages awarded were excessive—to determine *de novo* the merits of a cause of action already adjudicated by a court of competent jurisdiction. Here, there is no evidence or suggestion that the underlying contract between the debtor and Lamont was not commercially reasonable or that the debtor, when it undertook to supply a working collection system to Lamont, did not receive reasonably equivalent value in the form of Lamont's promise to pay the agreed price for the system. Accordingly, the court concludes that no showing has been made, sufficient to create a triable issue of fact, that a basis exists under § 548 of the Bankruptcy Code to avoid Lamont's judgment, even if that issue could be raised in an objection to claim rather than by a separate adversary proceeding under Fed.R.Bankr.P. 7001.

### C.

Under Fed.R.Civ.P. 56, made applicable to this contested matter by Fed.R.Bankr.P. 9014 and 7056, Lamont is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Lamont has filed in support of its motion for

---

ally to the debtor, no such defenses or avoiding powers are asserted here with the exception of

the trustee's avoiding powers under § 548, discussed *infra.*

summary judgment a copy, certified in the form required by 28 U.S.C. § 1738, of the state court pleadings and judgment. That record reflects a judgment, regular on its face, by a state court having in personam and subject-matter jurisdiction. The debtor has submitted no affidavits, depositions, or discovery responses raising any issue of lack of jurisdiction or of mistake, accident or fraud which prevented it from obtaining the benefit of its defenses or tending to show that Lamont did not actually incur damages in the amount set forth in its proof of claim. As noted by Judge Tice in *C-4 Media Cable South, supra,*

> Under Bankruptcy rule 3001(f) and 11 U.S.C. § 502(a), a proof of claim constitutes prima facie evidence of the validity of a claim. An objector must overcome the prima facie validity of a claim to shift the burden of production to the party who filed the claim. * * * The mere filing of an objection does not satisfy this requirement.

150 B.R. at 376. The only evidence cited by the debtor to rebut the prima facie validity of Lamont's claim are the contract clauses limiting damages to the amounts Lamont had paid, and Lamont's admission in its state court pleadings that it had paid the debtor $24,700.00. The contract was an exhibit to Lamont's motion for judgment and was before the state court, which nevertheless found that Lamont was entitled to a significantly greater amount of damages. Both full faith and credit, as required by 28 U.S.C. § 1738, as well as "the salutary principle of res judicata," *Heiser v. Woodruff, supra,* preclude this court from re-examining the amount of Lamont's claim, given the total lack of any evidence that a fraud was practiced on the state trial court or the state court lacked jurisdiction or that the debtor would otherwise be entitled under state law to relief from the default judgment.

### Conclusion

For the foregoing reasons, the court concludes that no evidence has been presented by the debtor sufficient to create a triable issue on its objection to Lamont's claim and that the Fairfax County Circuit Court judgment is res judicata as to the amount of such claim. Accordingly, the court will enter summary judgment in Lamont's favor allowing the claim.