**In re David Richard WILLIAMSON and Peggy Lynn Williamson, ˙Debtors.**

**Rubina N. Siddiqui, Plaintiff,**

v.

**Gloria Lynn Gardner, et al., Defendants.**

**Bankruptcy No. 02–82615–RGM. Adversary No. 05–1187.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

June 27, 2005.

Steven B. Ramsdell, Tyler, Bartl, Gorman & Ramsdell, P.L.C., Alexandria, VA, for Debtors.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

The question presented by the defendants' motions to dismiss is the effect of this court's order approving the sale of the debtors' home to Rubina N. Siddiqui on Siddiqui's subsequent state court law suit against the competing purchaser and the real estate agent. David and Peggy Williamson filed a chapter 13 bankruptcy petition on May 28, 2002. Their chapter 13 plan was confirmed on September 11, 2002. Despite their initial success in honoring the plan, by late 2004 they encountered difficulties and decided to sell their home and use the proceeds to complete the plan. On December 1, 2004, they entered into an Auction Marketing Agreement with Fox & Associates Partners, Inc., ("Tranzon Fox") for their home. The contract envisioned a public auction of the Williamson's home but permitted it to be marketed in the same manner as a traditional real estate agent would list and market the property prior to the auction. The one significant difference is that the purchaser agrees to pay a buyer's premium of 10% of the sales price in addition to the gross sale price.[1] In a traditional transaction, the seller pays the real estate commissions from the gross sales price.

The house sold quickly after being place on the market. Jerry Fleming submitted an offer in mid-December 2004. The debtors were out of town and before they saw Fleming's offer, Rubina Siddiqui submitted a higher offer which the debtors promptly accepted and noticed for a hearing to obtain court approval. Shortly before the

---

**1.** Whenever a sales price is referred to in this opinion, the buyer is also obligated to pay an additional 10% as the buyer's premium.

scheduled January 26, 2005, hearing, Fleming submitted a new offer that was higher than Siddiqui's offer. Debtors' counsel properly advised the court of the competing offers at the hearing.

Both offers were written on the same contract form which was entitled "Auction Sales Contract". Both provided for a buyer's premium of 10% of the sales contract. Both were noncontingent and accepted the property in its as-is condition. Both were subject to court approval.[2]

Siddiqui and her husband, Uzair M. Siddiqui, objected to Fleming's contract at the hearing. Mr. Siddiqui is an attorney although he did not identify himself as such at the hearing. Tr. at 5, line 11. They objected to considering Fleming's offer on two grounds. First, they asserted that Mrs. Siddiqui had a ratified contract and that, therefore, the debtors could not pursue any other contract until the court ruled on her contract. Tr. at 7, 11. They also asserted that the auctioneer and real estate agents, Gloria Lynn Gardner and Tranzon Fox, misled Mrs. Siddiqui by telling her that the property was sold and not available when in fact it had not been sold and was available. Tr. at 8, 11. Upon finding out that the property was still on the available, Siddiqui presented her contract which was accepted by the debtors subject to bankruptcy court approval.

The court heard the Siddiqui's objections and overruled them. The court noted that Siddiqui's contract was expressly contingent upon bankruptcy court approval. In additional to being an express contractual term, it is a restatement of the law with respect to sales of property of the bankruptcy estate other than in the ordinary course of business or that are otherwise subject to court control. *See* 11 U.S.C. § 363(b). Until the court approves a sale, the property remains "on the market." The trustee, or in this case, the debtor, retains the ability to continue to market the property. In fact, he may have an obligation to do so. The objective is to obtain the best price so as to assure the maximum distribution to creditors. This is accomplished, in part, by assuring that the marketing is full, fair and complete and that all prospective purchasers have a fair opportunity to participate in the process. This is well-established. It is reflected in some chapter 11 cases by the use of "stalking horses", break-up fees and other devises, all of which encourage broad participation in a bankruptcy sale and recognize the risks inherent in participation from the peculiar requirements of bankruptcy sales.

A private non-bankruptcy sale stands on a different footing. It is a private, bilateral transaction solely for the benefit of the immediate parties. There are no absent third-parties—that is, creditors—whose interests must be protected. No third-party approval—that is, court approval—is required. The parties make their own decisions and are bound by them.

The court declined to approve either offer. Both prospective purchasers were willing to offer more for the property, clearly establishing that the best price had not yet been reached. While both Fleming and Siddiqui stated that there had been difficulties in presenting their offers, those difficulties were resolved when both presented their offers and appeared in court prepared to pursue their offers further. In light of the competing offers, the court denied the motion to sell the property pursuant to either proposed contract

---

**2.** The court approval term was an additional handwritten term initialed by the parties. It stated: "This contract is subject to bankruptcy court approval. Settlement to take place 20 days after bankruptcy court approval."

and ordered that a live auction be held in court two weeks later. This allowed the property to be further marketed thereby eliminating any prior inadequate or improper marketing and allowing both Siddiqui and Fleming a fair and equal opportunity to further arrange their finances and participate in the sales process.

Two weeks later, the auction proceeded as scheduled. The terms and procedures were announced and again explained. Both Siddiqui and Fleming had the opportunity to ask questions. Neither had any questions and the bidding commenced. Siddiqui was the highest and last bidder. An order of sale was entered on February 11, 2005 confirming the sale to Siddiqui. (Doc. Entry 46).[3]

■ Two days prior to the auction sale, Mr. Siddiqui, acting as counsel for Mrs. Siddiqui, filed a motion for judgment in the Circuit Court for Loudoun County against Fleming, Gardner and Tranzon Fox. The motion for judgment basically made the same allegations Siddiqui made in this court at the January 26, 2005 hearing: availability of the property; Gardner's failure to inform Siddiqui that a third party buyer could purchase the property after her contract was signed; Gardner's concealment of Fleming's offer so as to ambush Siddiqui at the January 26, 2005, court hearing; and Gardner's and Fleming's collusion in these matters. The motion for judgment concluded that Gardner and Tranzon Fox breached their duties

owed to Mrs. Siddiqui under Title § 54.1 of the Code of Virginia and the Regulations of the Virginia Real Estate Board and that Gardner's and Fleming's acts constituted in the tortuous interference of Siddiqui's business relationship with the debtors. The motion for judgment requested damages equal to the additional money Siddiqui assumed she would have to pay to purchase the property and that Gardner and Tranzon Fox be barred from collecting any fees in this transaction.[4]

The defendants removed the motion for judgment to this court and filed their motions to dismiss.

### DISCUSSION

■ A motion to dismiss an adversary proceeding is governed by the Rule 12(b)(6) standard applicable to civil proceedings. *See* Fed. R. Bankr.P. 7012(b). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ The essence of Siddiqui's complaint is that Fleming and the real estate agents interfered with her contract with the debtors by submitting a higher and better offer. She complains that even though she was able to buy the property, she spent more than she would have had Fleming and the real estate agents not interfered. The elements of improper in-

---

3. The court orally approved the commissions to the real estate agents in accordance with the written agreements. This approval was not expressly stated in the order of sale but the approval of the sales contracts and auction agreement which provide for the real estate agents' and auctioneer's compensation and the court's express oral ruling necessarily approved their compensation

4. Siddiqui appears to assume that if Garner and Tranzon Fox are denied their fee that she would not have to pay the buyers' premium. This is incorrect. However denominated, the entire purchase price, including the buyers' premium, is property of the estate. If the compensation were reduced or denied, the proceeds would be disbursed to creditors, or in this case where creditors are paid in full, to the debtors. The estate, not Siddiqui, benefits from a reduction in administrative expenses.

terference are set out in *Maximus, Inc. v. Lockheed Information Systems, Inc.*, 254 Va. 408, 493 S.E.2d 375 (1997). There must be a contract expectancy; the interfering party must know of the expectancy; the interfering party must intentionally interfere with the expectancy; the interfering party must use improper means or methods in interfering with the expectancy; and the interference must result in a loss. Those elements are not present in this case.

Siddiqui had no protected expectancy. Both contractually and as a matter of bankruptcy law, Siddiqui's contract was contingent on court approval. The property was subject to the court's continuing control and supervision under the confirmed chapter 13 plan and the sale was not in the ordinary course of the debtors' financial affairs. 11 U.S.C. § 363(b). During the period between the execution of the contract and the court hearing on approval, the property remained on the market, was legitimately marketed and was subject to higher or better offers. The failure to obtain court approval of her contract was not the result of interference by Fleming, the real estate agents or anyone else but rather the normal process of exposing the property to the market. No improper means or methods were alleged and Siddiqui suffered no loss.

Siddiqui's complaint that the real estate agent attempted to prevent her from presenting an offer to purchase the property cannot form the basis for an action. If the allegation were true, it would be sufficient to reject Siddiqui's and Fleming's contract. It is an allegation that the marketing process was itself tainted. No contract, including hers, obtained through a compromised marketing process could be accepted. Her proposed contract would be properly rejected under its own terms, the handwritten term requiring court approval. She could no more benefit from a flawed marketing process than could anyone else. On the other hand, if the taint were purged, then she suffered no harm. The court's action in postponing the sale allowed both Siddiqui and Fleming additional time to determine what, if anything, they wished to do and to obtain additional financing, if necessary. It purged the transaction of any taint from the allegations raised by Siddiqui. No objection was raised to the postponement. It was a sufficient remedy to alleged taint.

In addition to being rejected on its merits, Siddiqui's complaint is barred by the prior ruling of this court under the doctrine of *res judicata* and collateral estoppel. *Res judicata*, "precludes the litigation of all ground for defenses and recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior action." *In re Professional Coatings (N.A.), Inc.*, 210 B.R. 66, 75 (Bankr. E.D.Va.1997). *Res judicata* serves two purposes. It supports the public policy that there must be "an eventual end to litigation." *Id.*, citing *In re Wizard Software*, 185 B.R. 512, 516 n. 9 (Bankr. E.D.Va.1995). *Res judicata* "promotes judicial economy by forcing the parties to rely on judicial decisions which, in turn, allows the court to resolve other disputes." *Id.*, citing *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

*Res judicata* bars the subsequent action when the following three elements are satisfied:

1) The prior judgment was final and on the merits and rendered by a court of competent jurisdiction in accordance with the requirements of due process;

2) The parties are identical, or in privity, in the two actions; and

3) The claim in the second matter [is] based upon the same cause of action involved in the earlier proceeding

*In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir.1996).

 The three elements are easily satisfied. Siddiqui, Gardner, Fleming, and Tranzon Fox were all parties to the original action, the debtor's motion to sell real property. Siddiqui's claim in the circuit court is based upon the same matters she raised in response to considering Fleming's contract and in seeking approval of her contract. This court had jurisdiction over the debtors' motion to sell real property. In disapproving the contracts on January 26, 2005 and in approving the sale of the property to Siddiqui at the auction on February 9, 2005, this court entered a final judgment on the merits. The court expressly rejected Siddiqui's ratified contract argument, purged the transaction of any taint in the marketing process by postponing the sale and found the sale free of any taint by approving the auction sale on February 9, 2005.

At the January 26 hearing, the court held that these allegations were not valid as a matter of law. The court explained to Siddiqui that her contract was subject to bankruptcy court approval and "the contract is not complete until the Bankruptcy Court approves it." (Tr.12). Given the Siddiqui's concerns and the last-minute appearance of a third party buyer, the court was not satisfied that the sale was fair and reasonable with regard to price, marketing, and related factors. The court rejected Siddiqui's contract and gave the parties adequate time to regroup and get their finances in order. Siddiqui willingly participated in the auction and submitted the winning bid. At no point did Siddiqui raise objections to the bidding process, the auction itself, or the award of real estate commissions. In accordance with the results of the auction, the court entered an order granting the debtors' motion to sell real property on February 11, 2005 (Doc. 56). This order represents a final judgment on all the matters which arose or could have arisen during both hearings, including matters related to Ms. Gardner's and Tranzon Fox's breach of duty, tortuous interference of business relations, and the award of real estate commissions and fees.

 In the Fourth Circuit, "a challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and longstanding." *Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251, 1255 (4th Cir.1997). See also *Celotex Corp. v. Edwards*, 514 U.S. 300, 305–307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). In *Spartan Mills*, the Bankruptcy Court for the Southern District of Florida ratified the sale of the debtor's assets and ordered that the net proceeds be paid to Bank of America as the lienholder in the first priority position. Rather than objecting to or appealing the sale order, Spartan Mills brought an action asserting a priority lien over the sales proceeds in the United States District Court for the District of South Carolina. The District Court granted summary judgment for the Bank. The Fourth Circuit upheld the District Court, stating, "[If] Spartan Mills knew that proper bankruptcy procedure had not been followed, its remedy was to seek reconsideration from the bankruptcy court itself or to appeal to the district court in Florida and ultimately the Eleventh Circuit." *Id.* at 1256.

The situation here is similar. If Mrs. Siddiqui felt that the proper bankruptcy procedure had not been followed, she could have filed a motion to reconsider

with this court, or she could have filed an appeal with the district court. Instead, she filed a collateral action in the state court before the auction hearing took place.[5] At the hearing, Mrs. Siddiqui did not apprise the court or the other parties of her pending state court action but rather willingly participated in an auction to which she ostensibly objected. The court had no knowledge of Mrs. Siddiqui's apparent dissatisfaction until the defendants filed the notice of removal and motions to dismiss.

For the reasons stated above, the complaint will be dismissed.

---

**5.** The court is concerned about the timing of the filing of the Motion for Judgment in the state court. It was filed two days prior to the auction sale at a time when Siddiqui did not know if there were any damages. It named the auctioneer, the real estate agency, and the competing bidder as defendants. If the timing of the motion was an attempt to chill bidding at the auction, it appears to have been unsuccessful because the defendants did not know about it until after the auction. There was no need to file before the auction.