In re James A. FLANNERY, Debtor.

Anthony R. DiMARCO, Plaintiff,

v.

James A. FLANNERY,
Debtor-Defendant,

and

First National Bank and Trust Company
of Newtown, Industrial Valley Bank,
Commonwealth of Pennsylvania and
James Loeffler, Defendants.

Bankruptcy No. 79–1733G.

United States Bankruptcy Court,
E. D. Pennsylvania.

June 29, 1981.

Christopher R. Rosser, Thistle, Moore, Rosser & Tull, Philadelphia, Pa., for plaintiff, Anthony R. DiMarco.

John P. Koopman, Bristol, Pa., for debtor-defendant, James A. Flannery.

Richard Danese, Jr., Stuckert, Yates & Krewson, Newtown, Pa., for defendant, First Nat. Bank and Trust Co. of Newtown.

Peter M. McGonigle, Philadelphia, Pa., for defendant, Industrial Valley Bank.

Commonwealth of Pennsylvania, Dept. of Revenue, Harrisburg, Pa., pro se.

Harry J. Agzigian, Levittown, Pa., for defendant, Joseph Loeffler.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is which of two agreements of sale of a parcel of realty, entered into by a chapter XII debtor, we should approve. We conclude that, because the first agreement of sale did not provide that time was of the essence, the buyer thereunder fulfilled the conditions of that agreement even though he did not obtain a finan-

cial commitment until seven days after the date required by the agreement. Furthermore, we conclude that since the buyer under the second agreement of sale had notice, through his agent, of the first agreement of sale, the buyer under the second agreement is not a bona fide purchaser with rights superior to the buyer under the first agreement.

The facts of this case are as follows:[1] On September 13, 1979, James A. Flannery ("the debtor") filed a petition for a real property arrangement under chapter XII of the Bankruptcy Act ("the Act").[2] On January 20, 1981, the debtor entered into a written agreement with Anthony R. DiMarco ("DiMarco") for the sale of the real estate and operating assets of "Jim Flannery's Restaurant" located at 111 Old Lincoln Highway, Penndel, Pennsylvania. By the terms of that agreement the sale of the property was absolutely conditioned on the happening of a number of events, one of which was that DiMarco would obtain a satisfactory financing commitment by February 10, 1981. After several extensions, that date was finally extended to March 27, 1981. DiMarco did not obtain a financing commitment, however, until April 3.[3] By that time the debtor had, earlier in the day of April 3, executed another agreement of sale for the property with Joseph Loeffler ("Loeffler").

On April 22, DiMarco filed a complaint[4] in this court requesting approval of his agreement of sale with the debtor. In response thereto, the debtor filed an application seeking the court's approval of either of the two agreements. Loeffler filed an

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. While this Act has been superseded by the Bankruptcy Code as of October 1, 1979, the provisions of the Act still govern petitions filed before that date. The Bankruptcy Reform Act of 1978, Pub.L.No.95–598, § 403, 92 Stat. 2683 (1978).

3. Although DiMarco testified at the trial that he was told by an official at Continental Bank on March 27 that he had the financing commitment, the attorneys for the debtor testified that

DiMarco told them on March 30 and on April 1, that he did not have such a commitment. We find that, if DiMarco had such an oral commitment, he would have produced the testimony of the bank official who had made the pledge on behalf of the bank. Lacking such supportive testimony, we conclude that DiMarco did not have the commitment on March 27.

4. The complaint named as defendants: the debtor, Loeffler and several parties with liens on the property (namely, First National Bank and Trust Co. of Newtown, Industrial Valley Bank and the Commonwealth of Pennsylvania.

answer to the debtor's complaint asserting that DiMarco's agreement of sale was null and void and requesting that the court approve his (Loeffler's) agreement of sale.

At the trial of this case, testimony was presented on several issues—the first being whether DiMarco did, in fact, have a financing commitment by March 27, the last date by which the parties had agreed he must have one. As stated above, we find that, from all of the evidence presented, DiMarco did not have a financing commitment until April 3.[5]

DiMarco then asserted that, even if he did not have the financing commitment by March 27, by the terms of the agreement he was entitled to a 15 day extension at his option. Even if we were to assume that DiMarco's interpretation of the agreement is correct (which Loeffler and the debtor strongly deny[6]), we conclude that DiMarco failed to exercise that option in a timely manner. To exercise the option the agreement requires that DiMarco give the debtor written notice of the exercise. The only written notice given by DiMarco to the debtor was by letter dated April 3—seven days after the expiration of time under the agreement. Thus, we conclude that, even if DiMarco had the option for an extension of time, he did not exercise it timely.[7]

DiMarco argues, however, that even if he failed to obtain the financing commitment within the required time (including all extensions), the agreement did not provide that time was of the essence and, consequently, the fact that he obtained the commitment seven days late (on April 3) did not void the agreement. We agree with DiMarco's legal contention. According to Pennsylvania law, unless an agreement for the sale of real property contains a clause stating that "time is of the es-

sence" with respect to obtaining a mortgage commitment, such a clause will not be read into the agreement. Thus, the failure to obtain such a commitment within the specified time would not result in a voiding of that agreement. *See, e. g., Carsek Corp. v. Stephen Schifter, Inc.,* 431 Pa. 550, 246 A.2d 365 (1968); *Blatt v. Blythe,* 65 D. & C. 2d 232 (C. P. Chester County 1973); *Miner v. Bobinis,* 63 D. & C. 2d 668 (C. P. Northampton County 1973); *Session v. Yack,* 18 D. & C. 2d 333 (C. P. Philadelphia County 1958). In the case before us, the agreement with DiMarco had no provision that time was of the essence and thus the fact that DiMarco did not obtain his financing commitment until after the time provided in the agreement had expired did not of itself make his agreement of sale null and void.

Moreover, DiMarco asserts, and we agree, that the debtor waived his right to demand strict compliance with the terms of his agreement. From March 27 to April 3, the debtor failed to demand that DiMarco comply with the agreement and failed to warn DiMarco that if he did not comply the debtor would be free to consider another offer. Furthermore, although the debtor did tell DiMarco, on April 1, that he was considering another offer, when DiMarco contacted the debtor's attorneys they told him that no other offer was being considered. Thereafter, when the debtor's attorneys did learn of Loeffler's offer they failed to contact DiMarco and communicate that fact to him. As a result, we conclude that, by the actions of the debtor and his attorneys in failing to notify DiMarco that they considered his agreement of sale to be null and void and in failing to notify him (after his specific inquiry) that another offer had been made and was being considered, the debtor waived whatever right he had to demand strict compliance of the agreement by DiMarco.

---

5. *See* note 3 and accompanying text *supra*.

6. Loeffler and the debtor assert that DiMarco no longer had the option of a 15 day extension because he had already used that option in February and they assert he is not entitled to more than one extension under the agreement.

7. Although the agreement does not state that the notice must be given prior to the expiration of the time period, it appears that the parties (in particular, DiMarco) so interpreted it—as evidenced by the fact that the prior notice of extension was given by DiMarco on February 9, where the expiration of the agreement would have been February 10.

Thus, we conclude that DiMarco's agreement of sale with the debtor is still valid. Since that agreement was executed prior to Loeffler's agreement of sale, DiMarco's agreement should be approved by us absent any reason to hold to the contrary. Loeffler contends, however, that his agreement—though second in time—should be approved rather than DiMarco's because Loeffler was a bona fide purchaser for value without knowledge of the prior agreement. We cannot agree with this contention because we find that Loeffler was not a bona fide purchaser for value without notice. As stated by the Pennsylvania Superior Court in *Long John Silver's, Inc. v. Fiore*, 255 Pa.Super. 183, 386 A.2d 569 (1978).

> [I]n order to qualify as a bona fide purchaser, the subsequent buyer must be without notice of the prior equitable interests of others.... If the subsequent purchaser has notice of the first agreement of sale or deed, he has no protection as a bona fide purchaser and his title is subject to the interest vested in the first purchaser. Either actual or constructive knowledge is sufficient to prevent the subsequent purchaser from acquiring the status of a bona fide purchaser.... Because constructive notice is not limited to instruments of record, a subsequent purchaser may be bound by constructive notice of a prior unrecorded agreement.... This is true because the subsequent purchaser could have learned of facts that may affect his title by inquiry of persons in possession or others who the purchaser reasonably believes know such facts....

386 A.2d at 573 (citations omitted).

 While Loeffler did not have personal knowledge of the DiMarco agreement of sale, his agent—Stephen McShane—knew of it, having been told of it by the debtor and the debtor's attorneys who told Loeffler that it was their opinion that the agreement was null and void. However, McShane did not conduct any inquiry, by contacting DiMarco or independent counsel, as to the validity of the DiMarco agreement. In *Long John Silver's, supra*, the court held that, on similar facts, the second buyer's agent was on notice to inquire of the first buyer or his agent whether that agreement was still valid. Not having done so, the court found that the second buyer did not qualify as a bona fide purchaser for value without notice. In the case at bench, since Loeffler was on notice to inquire of DiMarco as to the validity of the first agreement of sale and failed to do so, he is not a bona fide purchaser for value without notice.

Loeffler also argues that his agreement provides a price ($465,000 less $5,000 commission) in excess of that offered by DiMarco ($450,000). While this argument would have some relevance if this was a bankruptcy liquidation case, it is irrelevant in a real estate arrangement proceeding. Section 413 of the Act and Rule 12–53(b) of the Rules of Bankruptcy Procedure confer on the court jurisdiction to authorize the debtor in possession to sell the debtor's realty upon such terms and conditions as the court may approve. In a liquidation case the sale of the debtor's assets is essential; in a chapter XI case the liquidation of the estate is unusual and not necessarily contemplated. In a liquidation case, the sale to the highest bidder is legally essential; in an arrangement, designed as it is for the benefit of the debtor, the acceptance of the highest offer by the debtor is not mandatory and where the debtor has entered into conflicting agreements, the court, in determining which contract to honor, should be guided by the contractual principles enunciated by the laws of the state in which the contracts were conceived and executed. Therefore Loeffler's argument that his offer is greater than that of DiMarco is not controlling.

For the above reasons, we will confirm the agreement of sale entered into by the debtor and DiMarco.