**In the Matter of The OHIO CORRU-
GATING COMPANY, Debtor.**

**Bankruptcy No. B85–00900–Y.**

United States Bankruptcy Court,
N.D. Ohio.

April 11, 1985.

Dixon R. Rich, Pittsburgh, Pa., for debt-or-in-possession.

Mark Schlachet, Cleveland, Ohio, for Official Creditors Committee.

Wallace W. Walker, Jr., Cleveland, Ohio, for Emerald Container Corp.

Donald S. Scherzer, Cleveland, Ohio, for Joint Venture.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

On March 11, 1986, the Debtor-in-Possession filed with the Clerk and served on parties in interest notice of its intent to sell certain assets of the Debtor. On Motion of the Debtor-in-Possession and for cause shown, the Court entered an Order shorten-ing the notice period to March 21, 1986. On March 21, 1986, the Debtor-in-Possession accepted sealed bids for the purchase of certain real and personal property of the Debtor. Following the acceptance of bids on that date, the Clerk received for filing on March 27, 1986, a document entitled "Memorandum of North Coast Container Corporation and Encore Steel Company in Opposition to Application of Debtor-in-Possession for Leave to Sell Certain Real and Personal Property." Taking that Memorandum as an objection to the sale by the Debtor-in-Possession of that certain real and personal property of the Debtor, a hearing was scheduled on April 7, 1986. On that date, the Debtor-in-Possession filed its application for leave to sell the property, pursuant to the provisions of Title 11, U.S. Code Section 363(b). That application recites that on March 21, 1986, the Debtor-in-Possession received a bid of Three Hundred Seventy-Six Thousand & 00/100 Dollars ($376,000.00) from Emerald Container Corporation and on the same date received an additional bid for the same property from the joint venture of North Coast Container Corporation and Encore Steel Company in the amount of Four Hundred Thousand & 00/100 Dollars ($400,000.00). The latter bid was received after the Debtor-in-Possession had opened sealed bids from other parties, including Encore Steel Company. The Debtor-in-Possession further states in its application that "the consummation of either of the transactions contemplated by the Debtor-in-Possession will aid in the reorganization of the Debtor."

At the hearing on April 7, 1986, both counsel for Emerald and for the objecting joint venture argued that various alleged acts of fraud, misappropriation of corporate opportunities by a fiduciary, possible anti-trust violations and other suggested improprieties existed. These various charges and counter-charges were urged upon the Court as reasons why the bids of Emerald and of the joint venture should each be rejected in favor of the other.

The arguments of Emerald and of the joint venture were heard by the Court,

while it kept in mind that the Debtor-in-Possession prayed in its application to sell the described real and personal property that it sought leave to make "either of the sales," referring to the competing offers of Emerald and of the joint venture.

Section 363(b) of Title 11 provides, in pertinent part, that "the trustee, after notice and a hearing, may sell, other than in the ordinary course of business, property of the estate." Section 1107 of Title 11 provides that a debtor-in-possession shall have all the rights and powers and shall perform all the functions and duties of a trustee, with limited exceptions therein noted and not here applicable.

In enacting the Bankruptcy Code, Congress expressed its specific intent that judges of the United States Bankruptcy Court shall not participate in the administration of bankruptcy estates. *In re Nepsco, Inc.*, 36 B.R. 25. The intent of Congress is clearly set out in the legislative history of the Bankruptcy Code. H.R. No. 595, 95th Cong., 1st Sess.; pp. 3–4, 99–115, U.S.Code Cong. & Admin.News 1978, p. 5787. At page 113, that House Report points out that as early as 1792, in *United States v. Ferreira*, 54 U.S. (14 Howard) 40, 14 L.Ed. 42, the Supreme Court enunciated the principle that courts of the United States may not be invested with administrative functions—they may only decide cases or controversies. In abolishing the system of referees in bankruptcy and in creating the bankruptcy court system, Congress also created an expanded trustee system including pilot projects for United States trustees and provided in Section 1107 that debtors-in-possession would exercise trustee powers and responsibilities in cases arising under Chapter 11 of Title 11. The trustee (and the debtor-in-possession acting as trustee) is invested with administrative powers formerly the province of referees in bankruptcy.

To the extent the April 7, 1986, application of the Debtor-in-Possession seeks not our confirmation of sale to a bidder of the Debtor-in-Possession's choice but rather our choosing between two competing bidders, the Debtor-in-Possession asks the Court to undertake a Congressionally-prohibited administrative function. Such an action is beyond the jurisdictional mandate of Congress to bankruptcy courts and judges and may be subject to reversal on appellate review. *In re Russo*, 762 F.2d 239, (2nd Cir.1985).

The Court is greatly disturbed to find that the earnest efforts of the Debtor-in-Possession to insure the fairness of the process by which it sought on March 21, 1986 to find a buyer for assets of the Debtor have been upset by those who each seek to now benefit from that process. The quandry in which the Debtor-in-Possession now finds itself is not one of its own making, but rather the creation of the two competing interests. The favoring of one over the other will necessarily give rise to an appearance of impropriety to which this Court will not add its imprimatur.

It is clear to us that the Court has no authority to designate a buyer from among several competing interests. It is reasonable to conclude, in the context of this case, that the Debtor-in-Possession's choosing one of the two competing bids over the other would foster further litigation. The Debtor-in-Possession has made it clear that the conclusion of the sale of assets of the Debtor at the earliest possible date is in the best interest of the estate, the creditors, and employees.

Upon review, we find the issue of an unsuccessful bidder's standing to object to be less than well-settled, but our conclusion herein does not require us to reach that legal issue.

It appears to us that the only avenue available to the Debtor-in-Possession which will accommodate all the concerns set forth herein and which will accord the fullest possible measure of fairness and finality is by way of a public auction. The Debtor-in-Possession is encouraged to take prompt action to engage the services of a public auctioneer. The Court will give its prompt and favorable attention to a motion by the Debtor-in-Possession to shorten the time of

notice and to permit a public auction at the earliest possible date.

Our conclusion, like that of the United States Court of Appeals for the Second Circuit in *In re Beck Industries, Inc.*, 605 F.2d 624, 636 (1979) that the competition for the assets may have been stifled dictates a new process. Like the *Beck Industries* court, we do not bar any party from bidding, as "our objective is to maximize the bidding, not to restrict it." *In re Beck Industries, Inc., supra,* at pg. 637.

For the reasons hereinbefore set forth, the April 7, 1986, application of the Debtor-in-Possession for approval of sale to either Emerald or the joint venture, based on their respective March 21 bids, is denied.

An appropriate Order will enter.