# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———————————

No. 04-6009 MN

———————————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Lawrence A. Kreger, | * | |
| Robin Kreger, | * | |
| | * | |
|     Debtors. | * | |
| | * | |
| | * | Appeal from the United States |
| Thousand Acres Development, LLC, | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| | * | |
|     Plaintiff-Appellee, | * | |
| | * | |
|         v. | * | |
| | * | |
| Michael J. Iannacone, | * | |
| Robin Kreger, | * | |
| and Lawrence A. Kreger, | * | |
| | * | |
|     Defendants-Appellants. | * | |

———————————

Submitted: March 12, 2004
Filed: March 19, 2004

———————————

Before FEDERMAN, MAHONEY, and VENTERS, Bankruptcy Judges.

———————————

FEDERMAN, Bankruptcy Judge.

———————————

Debtors Lawrence and Robin Kreger, as well as their Chapter 11 Trustee/Plan Administrator Michael J. Iannacone (Appellants), appeal an order of the bankruptcy court[1] granting partial summary judgment to appellee Thousand Acres Development, LLC, (Thousand Acres). The court held that Thousand Acres is entitled to judgment against Appellants for specific performance of the Purchase Agreement entered on May 10, 2001, and later adopted by the trustee as the real party in interest seller. We affirm.

## FACTUAL BACKGROUND

Debtors Lawrence and Robin Kreger filed a Chapter 11 petition on September 29, 2000. On April 5, 2001, the Court appointed Michael Iannacone as Chapter 11 trustee, pursuant to Section 1104 of the Bankruptcy Code (the Code). On May 10, 2001, the Kregers entered into a Purchase Agreement (the Agreement) to sell to Thousand Acres 23 acres adjacent to their homestead. The parties agreed on a purchase price of $200,000.00, and Thousand Acres gave the Kregers $2000.00 as an earnest money deposit. Thereafter, the Kregers informed the trustee of the Agreement, and turned over the earnest money to him. The Agreement set a closing date of June 29, 2001, but closing was subject to certain contingencies, the most significant being that the buyer would be able to obtain approval to plat the acreage for residential development. On May 31, 2001, the trustee filed a motion to sell several tracts of real estate owned by Mr. Kreger. Included in the motion was the 23 acres, which the trustee moved to sell to Thousand Acres for $200,000.00. The motion recited that "[t]rustee has received an offer to purchase approximately 23 acres owned by Debtor from Thousand Acres Development, LLC, . . . . The purchase price is $200,000.00 for a conveyance free and clear of liens and encumbrances . . . . Trustee believes it is in the best interest of the Debtor's estate to accept the offer

_____

[1]The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota.

from Thousand Acres Development LLC to sell the property . . . ."[2]  On September 13, 2001, the court entered an Order authorizing the trustee to sell the 23 acres to Thousand Acres.  Closing of the sale was delayed by two factors.  The property was still subject to the probate process resulting from the death of Mr. Kreger's former wife, who may have had a marital interest.  And, Thousand Acres wanted to obtain approval of its plat prior to closing.

On November 26, 2002, on motion of the Chapter 11 trustee, the court entered another order approving the sale of 23 acres to Thousand Acres.  Then, on January 18, 2003, again on motion of the trustee, the court entered an order approving the sale for a third time.  The first order did not authorize the trustee to consent to the platting of the 23 acres, therefore, Thousand Acres requested the second and third orders to specifically so authorize. In order to grant approval for the platting, the local authorities required that the land not being conveyed as part of the tract–Mr. Kreger's homestead–be included in the plat and designated as an "out lot."  Since inclusion of the homestead in the plat would affect Mr. Kreger's rights, the trustee testified that, prior to submitting the second motion, he obtained Mr. Kreger's consent.[3]  The debtors did not object to any of the orders approving the sale, and did not move to set aside any of those orders.

During the same period that the trustee was attempting to sell assets, the debtors were attempting to confirm a Plan of Reorganization (the Plan).  On January 2, 2002, they filed their First Proposed Plan.  On February 6, 2003, the court confirmed their Third Modified Plan with an effective date of  February 25, 2003.  The Plan provided that , as of the effective date, the trustee would be appointed as Plan Administrator, and that, as Plan Administrator, he would continue to liquidate assets of the estate. To facilitate the liquidation, the Plan provided that the Plan

---

[2]Appellant's Appendix, A-181.

[3]Appellant's Appendix, A-166.

Administrator would be granted a lien on real estate titled in the name of the debtors. The Plan further provided that when the Plan Administrator had paid all creditors, either because he had sold sufficient property or because the debtors had obtained refinancing, the Plan Administrator's lien would be released.

Upon approval of the platting, the trustee and Thousand Acres scheduled a closing for February 26, 2003, which was the effective date of the plan. On that morning, the trustee notified Thousand Acres that, between land sales and a refinancing obtained by the debtors, he had received sufficient funds to pay all creditors; therefore, he would not proceed to closing, but would, instead, release the 23 acres back to the debtors. In the meantime, the now-platted land had substantially increased in value.

Thousand Acres filed an adversary proceeding in three Counts. In Count One Thousand Acres sought an order for specific performance requiring the debtors and the trustee to comply with the terms of the Agreement. In Count Two Thousand Acres sought damages for breach of contract, and in Count Three Thousand Acres sought an administrative claim for the costs incurred in platting the 23 acres and preparing for closing. Thousand Acres then filed a motion for partial summary judgment for specific performance of the Agreement. The bankruptcy court found in favor of Thousand Acres as to specific performance, and thereby granted the motion for partial summary judgment. After a prior appeal was dismissed, the bankruptcy court found that due to its grant of specific performance, all other claims in the adversary should be dismissed, thereby making the grant of partial summary judgment a final order over which this panel has jurisdiction.[4]

---

[4]28 U.S.C. § 158(a) and (b)(1).

## STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed *de novo*.[5] A grant of summary judgment is proper only where, assuming all reasonable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[6] As a result, a bankruptcy court's order granting summary judgment is subject to *de novo* review.

## DISCUSSION

Appellants argue that the Agreement was not enforceable because of contingencies that had not been fulfilled by the deadlines stated in the Agreement. They further argue that the Agreement was an executory contract that was never assumed by the debtors or the trustee in the bankruptcy case. Next, they argue that the Plan revested all assets in the debtors, and that Thousand Acres, which is not a creditor in the case and, therefore, not a party to the Plan, lacks standing in the bankruptcy court. These arguments ignore the effect of a court order approving a sale. Upon motion by the trustee, and with the undisputed consent of the debtors, the court here entered three orders approving the sale. Those orders created a binding obligation to sell the property on the terms stated in the orders.

Appellants argue that the trustee's motion to sell, and the court's order approving the sale, do not constitute a writing sufficient to satisfy the statute of frauds. The State of Minnesota does require a "writing" for the conveyance of real estate:

---

[5] *In re Cochrane,* 124 F.3d 978, 981 (8th Cir. 1997); *In re Kjellsen*, 53 F.3d 944, 946 (8th Cir. 1995).

[6] Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

No estate or interest in lands . . . shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties creating, granting, assigning, surrendering, or declaring the same, or by their lawful agent thereunto authorized in writing.[7]

Thus, the writing must be signed by the grantor, or in this case, since the real estate at issue is undisputedly an asset of the bankruptcy estate, the trustee. As the Court found, the trustee adopted the essential terms of the Agreement by filing with the court three separate motions for approval of the sale. Those motions, and the orders approving them, represent the terms of the agreement between the trustee and Thousand Acres. In considering whether to order specific performance, the bankruptcy court considered the following five factors: (1) whether the contract was clear; (2) whether the contract was made for adequate consideration with fair and reasonable terms; (3) whether the contract was induced without sharp tactics, mistake, or misrepresentation; (4) whether enforcement of the contract will not produce disproportionate hardship; and (5) whether the beneficiary can be properly compensated in damages.[8] As the court found, the contract was clear and the consideration was fair at the time the parties entered the contract. In fact, the Kregers elected to sell this real estate postpetition without authorization of the court or the trustee. Moreover, the Kregers only sought to escape the contract after the value appreciated through either passage of time, or Thousand Acres' efforts to have the real estate platted for residential development.

The Kregers, who are of course a party to the bankruptcy case, had the opportunity to object to the bankruptcy court's orders, or to move to set them aside.

---

[7]Minn. Stat. Ann. § 513.04 (Supp. 2003).

[8]*Metro Motors v. Nissan Motor Corporation in U.S.A.*, 339 F.3d 746, 753 (8th Cir. 2003).

Once the orders became final, however, they came to represent the binding obligation of the trustee, and the debtors, to close the sale on the terms set out in the orders.

The debtors argue that the court orders "authorize" but did not require the sale. The motion to approve the sale specifically states that the trustee has received an offer from Thousand Acres to purchase the property for the price of $200,000.00.[9] Entry of the court order constitutes an acceptance of that offer.[10] The trustee would have had a claim for breach of contract, and a right to retain the earnest money deposit, had Thousand Acres refused to complete the sale following the court's order. The order, thus, does not simply give the trustee an option to sell, as the debtors argue; otherwise, buyers would be discouraged from purchasing assets out of a bankruptcy case. Certainly buyers routinely make offers to purchase assets from a trustee, which offers are subject to higher and better offers being received at the hearing for approval of the sale. But once the order approving the sale is entered, that order represents a binding obligation, unless the order specifically provides otherwise.[11]

Debtors next argue that the Plan controls over the Order Approving the Sale, and that the Plan specifically provides that upon its effective date, assets revest in the debtor subject to the terms of the Plan. However, the Plan, by its terms, authorizes the Plan Administrator to sell assets, and specifically, the asset at issue here, so the assets revert to the debtor subject to that authorization. And, even if all creditors were paid

[9]Appellants Appendix, at A-181.

[10]*Rosenberg v. Deitrick*, 37 F. Supp. 700, 704 (D. Mass. 1940) (The court found an enforceable contract where the comptroller accepted the offer and obtained a court order approving it).

[11]*See Four B. Corp. v. Food Barns Stores, Inc. (In re Food Barn)*, 107 F.3d 558, 565 (8th Cir. 1997) (stating that the goal of estate enhancement diminishes as an auction participant's reasonable expectations increase, such as when the court actually enters an order approving the sale).

by the closing date, the court order authorizing the sale represents the binding obligation of both the trustee and the debtor. If the debtors did not want the sale to go through, or wanted to provide in the order that the sale could be withdrawn if all creditors were paid, they should have objected conditionally to the sale prior to entry of the order. Thousand Acres was not a creditor, therefore, it was not a party to the confirmation process. As a consequence, Thousand Acres was entitled to rely on the court order and on the terms stated therein.

Next, the debtors argue that there are disputed material facts precluding the grant of summary judgment. For example, debtors argue that the court incorrectly found that the Plan required the sale, that the Agreement required consummation of the sale, that the trustee had ratified the Agreement, and that the trustee had waived contingencies contained in the original Agreement. In our analysis, none of these facts is material. There is no dispute that the court entered not one, but three orders approving the sale. Nor is there any dispute that the terms of the Agreement between the trustee and Thousand Acres, as referenced in the trustee's motion for approval of such sale, are contained in those orders. The terms of those orders are not in dispute. The court, therefore, properly granted summary judgment requiring the parties to specifically perform the terms of those orders.

For all these reasons, we affirm the judgment entered by the bankruptcy court.

_____