**In re PSYCHROMETRIC SYSTEMS, INC., Debtor.**

**No. 03–12551 EEB.**

United States Bankruptcy Court, D. Colorado.

March 30, 2007.

Psychrometric Systems, Inc., Golden, CO, pro se.

Jacob J. Meister, Chicago, IL, Kevin F. D'Amour, Pepper Hamilton, LLP, Princeton, NJ, Philip A. Pearlman, Virginia M. Dalton, Denver, CO, for Trustee.

## ORDER

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Approval of Proposed Settlement of Controversies Between the Estate and Michael A. Kast (the "Motion"), filed by the David E. Lewis, the Chapter 7 trustee (the "Trustee"), and the Objection, filed jointly by Global Water Technologies, Inc., GK Holdings, Inc. and George Kast (collectively referred to as the "Objectors"). This matter involves both a compromise of claims and a sale of assets. The sale aspect requires the Court to consider whether a trustee is bound by an agreement to sell to one party and is, therefore, precluded from negotiating a better deal with another party, prior to obtaining court approval of the proposed sale, or whether he has an obligation to pursue a potentially better offer in order to maximize the value for the estate. Following an evidentiary hearing, the Court hereby FINDS and CONCLUDES:

## I. BACKGROUND

The Debtor's business involved the design, production and installation of custom

cooling tower systems. It also supplied upgrades and component parts for these systems. The Debtor filed for Chapter 11 protection on February 18, 2003. Less than one month later, it converted to a Chapter 7 case on March 13, 2003. At that time, it was clear that the estate was hopelessly insolvent and the Debtor's assets were fully encumbered by the security interest held by Wells Fargo Bank West, N.A. (the "Bank"). Early in the Chapter 7 case, the Bank and the Trustee entered into a carve-out agreement, under which the Trustee agreed to liquidate remaining estate assets in exchange for the Bank's agreement to permit payment of certain priority claims out of proceeds of its collateral. The Trustee has already liquidated most of the Debtor's assets. He has also pursued avoidance claims on behalf of the estate, which are not subject to the Bank's security interest.

In one of his avoidance actions, the Trustee has sued Michael Kast ("Michael"), a former officer of the Debtor, who received a payment in the principal amount of $75,000, within the ninety days prior to the bankruptcy filing. The Trustee has asserted that this payment constitutes a preference under 11 U.S.C. § 547(b), which is recoverable under 11 U.S.C. § 550(a) (the "Preference Claim").[1] The only defense that Michael has raised to the Preference Claim is his denial that the funds paid to him constituted property of the estate. Specifically, he contends that the Bank exercised such dominion and control over the Debtor's funds at the time the Debtor issued its check to him, that the funds were no longer property of the Debtor. At the hearing on the present Motion, Michael testified that the Bank had approved the payment to him and that he does not recall any warnings regarding

the possible recovery of this payment as a preference. On the other hand, George Kast ("George"), Michael's brother and the former President of the Debtor, testified that the Bank was unaware of the payment to Michael and became angry when it learned of the transfer. He further testified that several members of the Debtor's management, including in-house counsel, warned Michael of the potential recovery of the funds in the event the Debtor filed bankruptcy.

Michael has informally asserted his own claim against the estate. In 2003, the Court approved an employment agreement between the Trustee and Michael, by which the estate agreed to pay Michael an hourly rate of $100 for information and other assistance in collecting the Debtor's accounts receivable. The Trustee has acknowledged that Michael has provided valuable assistance in this regard, but he has not provided the Trustee with supporting billing records. The employment agreement limited his compensation to no more than $7,500. The Trustee estimates Michael's potential administrative expense claim at $5,000 (the "Administrative Claim").

In the process of resolving their competing claims, the Trustee and Michael entered into a settlement, which compromises the two claims and also transfers certain estate assets to Michael. In essence, the settlement provides: (1) Michael pays the estate $58,000; (2) the Trustee and Michael give each other mutual general releases; and (3) the Trustee transfers to Michael the project files of the Debtor's former clients and "associated good will." The files and goodwill are collectively referred to as the "Assets." Nothing in the settlement agreement or the Motion indi-

---

1. All references herein to Section shall refer to Title 11, United States Code, unless other- wise expressly stated.

cates how the parties arrived at the amount of $58,000. Nor do the parties allocate a specific portion of this amount to the sale of the Assets.

The project files consist of bids, blueprints, and specifications, in paper form, electronic data and other media (the "Files"). The Files contain engineering and construction details that would be useful to anyone performing maintenance or repair work on the cooling towers. Michael currently operates a business related to the cooling tower industry and, presumably the Files have value to him in his current endeavors.

At the time that the Trustee entered into his agreement with Michael, he had not advertised or otherwise exposed the Files to the market. He did not believe the Files had any significant value or wide market appeal. He reasoned that, because the Files contain documents related to the bidding and fulfillment of jobs for specific customers, the only persons likely to have an interest in them were the former clients, who would know that the Trustee was in possession of the Files. They could have made an offer for the Files at any time, but none of them did. In 2003, the Trustee received an offer from Michael to purchase the Files for $5,000.

As creditors of the estate, the Objectors assert that this settlement provides little or no consideration for the sale of the Assets. George, on behalf of the Objectors, offered to pay $50,000 for the Assets.[2] This purchase price would be payable in four equal installments of $12,500, with the first payment due on consummation of the sale, and the remaining three payments due on each successive calendar quarter date following the sale.

George's offer pleased and surprised the Trustee, but he did not feel free to pursue negotiations with George. He believed that he was bound by his agreement with Michael, unless and until the Court denied his Motion. The Trustee acknowledged that he had attributed little consideration to the sale of the Assets under the settlement because he thought the Files had insignificant value and he could not imagine that there was any "goodwill" remaining in the Debtor, which had been in Chapter 7 proceedings for three years. Overall, the Trustee thought the settlement agreement was in the best interests of the estate.

Michael testified that the agreed upon amount of $58,000 represented a composite amount, and he did not specify what amount represented the purchase price for the Assets. He further testified that he felt the Trustee's case against him was weak, but he wanted to save the cost of litigation. Although he did not provide a basis for his opinion, he thought that litigation could cost as much as $30,000. He also wanted to capitalize on what he thought were the only assets remaining in the estate.

## II. DISCUSSION

The Trustee has presented his settlement, involving both a sale and a compromise, as a package deal, requiring the Court to approve or reject it on that basis. The sale aspect of the Motion must be reviewed under the requirements of Section 363. The compromise portion is subject to the requirements of Bankruptcy Rule 9019 and the factors outlined in *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022

---

**2.** In the Objection, the offer is made by Global Water Technologies, Inc. ("Global"). At the hearing, George testified on behalf of himself and Global and the parties used the terms "George's offer" and "Global's offer" interchangeably. Hereinafter we refer to the offer as "George's offer."

(10th Cir. BAP 1997). The Motion must satisfy both tests. Failing either test is a sufficient ground for denying the Motion. As explained more fully below, the Court finds that the Motion does not satisfy the requirements of Section 363 and, therefore, the Court need not analyze it under Rule 9019.

■■■■ Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may . . . sell . . . other than in the ordinary course of business, property of the estate. . . ." The trustee is given " 'ample discretion to administer the estate, including authority to conduct public or private sales of estate property.' " *In re Bakalis*, 220 B.R. 525, 532 (Bankr.E.D.N.Y.1998) (*quoting In re WPRV–TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991)). In fact, an order authorizing the sale is not required if the trustee gave proper notice and no party filed a timely objection. *Id.* at 531; *accord In re Whatley*, 155 B.R. 775, 778 n. 1 (Bankr.D.Colo. 1993). On the other hand, if objections are filed, then the court must first approve the proposed sale.

The appropriate standard used by courts in reviewing a trustee's recommendation has been enunciated in myriad ways. *See, e.g., In re Schipper*, 933 F.2d 513, 515 (7th Cir.1991) (stating that sales are an exercise of a fiduciary duty that requires an "articulated business justification"); *In re Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir.1985) (opining that the sale must result in the estate obtaining the best price possible under the circumstances); *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr.E.D.Mo.1988) (holding that a sale must be both "fair and reasonable" in price and made in "good faith"); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr.D.Del.1987) (holding that the transaction must be "fair and equitable" and in "good faith"); *In re Charlesbank Laundry Co.*, 37 B.R. 20, 22 (Bankr.D.Mass.1983) (stating that the sale must be "in the best interests of the estate and creditors"). These variations all fall under the rubric of the "business judgment" test. *See* 3 Collier on Bankruptcy § 363.02[1][g], at 363–14 (Lawrence P. King, ed., 15th ed. rev. 1997).

*In re Bakalis*, 220 B.R. at 531–32. The trustee's business judgment is to be given "great judicial deference." *Id.* (*citing WPRV–TV, Inc.*, 143 B.R. at 319).

■■■ Nevertheless, the court must always scrutinize whether the trustee has fulfilled his duty to "maximize the value obtained from a sale, particularly in liquidation cases." *Id.* (citations omitted). *See also In re Landscape Properties, Inc.*, 100 B.R. 445, 447 (Bankr.E.D.Ark.1988). In this case, the Trustee did not market the Assets before entering into the settlement. Although he became aware of a potentially better offer, he did not pursue it, believing he was bound to honor his agreement with Michael. At the hearing, the Trustee expressed his sense of conflicting duties, namely a duty of good faith and fair dealing implied in his contract with Michael, and a duty to the creditor body at large, to maximize the value of the estate. In an effort to avoid violating either of these obligations, he presented his Motion to the Court, disclosed the competing offer, and left it in the hands of the Court to decide whether to approve the agreement.[3]

The Tenth Circuit has not yet directly addressed the issue of whether a trustee is bound by an agreement to settle or to sell assets, precluding him from shopping the deal or withdrawing his motion. Outside the Tenth Circuit, courts are divided on

---

**3.** The Trustee's approach in this case conforms with the court's ruling in *Myers v. Mar-* *tin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996).

this issue. Some courts hold that an agreement cannot be binding on the trustee, absent court approval. *Thousand Acres Dev., LLC v. Iannacone (In re Kreger)*, 307 B.R. 106, 111 (8th Cir. BAP 2004) ("[B]uyers routinely make offers to purchase assets from a trustee, which offers are subject to higher and better offers being received at the hearing for approval of the sale .... [and] once the order approving the sale is entered, that order represents a binding obligation...."); *In re Smith*, 352 B.R. 500 (Bankr.N.D.Ala. 2006) (trustee's motion to sell was not binding, and trustee did not breach any contractual obligations when, upon being advised of a higher offer, he withdrew his motion); *Siddiqui v. Gardner (In re Williamson)*, 327 B.R. 578, 583 (Bankr. E.D.Va.2005) (during the period between execution of the contract and the court hearing on approval, the property remained on the market, subject to higher offers and this was all part of the "normal process of exposing the property to the market."); *In re Landscape Properties, Inc.*, 100 B.R. 445, 447 (Bankr.E.D.Ark. 1988) (in sustaining objection to private sale based solely on availability of higher offer, court held there is no contract without bankruptcy court approval); *In re Am. Freight Sys., Inc.*, 114 B.R. 261, 262–63 (D.Kan.1990) (bankruptcy court did not err in considering competing bids on date of sale hearing because prior bid was merely "a proposed sale which was subject to the bankruptcy court's approval."). Other courts hold that an agreement is binding on all the parties pending court approval. *In re Frye*, 216 B.R. 166, 173 (Bankr. E.D.Va.1997) (see collection of cases therein); *White v. C.B. Hannay Co. (In re Lyons Transp. Lines)*, 163 B.R. 474, 476 (Bankr.W.D.Pa.1994) (holding that absent fraud, a settlement agreement is binding pending approval by bankruptcy court).

While it does not directly address this issue, we find guidance in *In re Broadm-* *oor Place Investments, L.P.*, 994 F.2d 744 (10th Cir.1993). In *Broadmoor*, the debtor-in-possession ("DIP") signed an agreement with G–K Development Company, Inc. ("G–K") for the sale of a building for $5.7 million with certain contingencies ("the G–K agreement"), including a condition of bankruptcy court approval. The DIP subsequently entered into a second agreement with Robinson for $5.5 million, containing no material contingencies (other than court approval) ("the Robinson agreement"), as a back-up bid. In its motion, the DIP sought approval of the initial G–K agreement. The bankruptcy court, however, approved the Robinson bid, finding it to be the best bid because it contained fewer contingencies and allowed for a more immediate closing. On appeal to the Tenth Circuit, G–K argued in part that the bankruptcy court had usurped the trustee's role, by improperly participating in estate administration.

■ The Tenth Circuit acknowledged that a bankruptcy court should not itself select from competing bids and that to do so improperly places the court in estate administration. But it further held that "a Bankruptcy Court in a case such as this does have the power to disapprove a proposed sale recommended by a trustee ... if it has an awareness there is another proposal in hand which, from the estate's point of view is better or more acceptable." *Id.* at 746 (citing *In re Landscape Properties, Inc.*, 100 B.R. at 447). In so ruling, it stated that to call the G–K agreement a "contract" would be a "misnomer since there can be no contract in this situation without Bankruptcy Court approval .... [and] these instruments are but binding bids...." *In re Broadmoor*, 994 F.2d at 745 n. 1.

The *Broadmoor* court relied on the case of *In re Landscape Properties, Inc.*, 100 B.R. 445 (Bankr.E.D.Ark.1988), in which a

party objected to the Chapter 7 trustee's motion to approve a private sale solely because he believed a better offer was available. Although both offers were for the same purchase price, the objector argued that the second offer was the best offer because it contained fewer contingencies. The trustee chose to submit the first offer to the court, without supporting evidence.

In a thoughtful and persuasive opinion, the *Landscape Properties* court recognized that an objection to sale "based simply on the fact that there is a higher offer is a valid objection. . . ." *Id.* at 448 (*citing In re Flannery*, 11 B.R. 974, 977 (Bankr.E.D.Pa. 1981)). But it rejected the objector's request that the court choose between the two competing bids. "[T]o do so would be to undertake a congressionally prohibited administrative function. Such an action is beyond the jurisdictional mandate of Congress to bankruptcy courts and judges and may be subject to reversal on appellate review." *Id.* at 447 (*citing In re Russo*, 762 F.2d 239 (2nd Cir.1985)). Like the Tenth Circuit, it explained the court's proper role in this process. "The Court then can do no more than disapprove the Trustee's proposed sale if it believes that there is a higher . . . and better offer for the estate's assets." *Id.* It then gave additional guidance to the trustee, by rejecting the notion that the trustee was bound by his agreement with the first offeror, stating that "there simply is no contract without bankruptcy court approval." *Id.* "It may be that the only avenue available to the Trustee which would accommodate all

the concerns and which will accord the fullest possible measure of fairness and finality is by way of a public auction." *Id.* (*citing Matter of Ohio Corrugating Co.*, 59 B.R. 11 (Bankr.N.D.Ohio 1985)). This approach is in keeping with the "strong policy favoring competitive bidding and finality to sales in bankruptcy proceedings." *Id.* (*citing In re Dartmouth Audio, Inc.*, 42 B.R. 871 (Bankr.D.N.H.1984)).[4]

In our case, the Court strongly suspects that the settlement attributes little or no value to the Assets. The Trustee admitted as much. Michael did not directly answer this question, but the $58,000 offer could easily represent nothing more than a $75,000 Preference Claim, offset by an Administrative Claim of roughly $5,000, less potential costs of litigation. It is not difficult to imagine that the $12,000 discount represents the costs of litigating the Preference Claim and/or the Administrative Claim, which would mean that the settlement reflects no consideration for the Assets.

In contrast, George has offered $50,000 for the Assets alone. This offer would allow the Trustee to continue to pursue his Preference Claim. Admittedly, George's offer involves a down payment of $12,500 by cashier's check, with the balance to be paid over time. The Trustee has not yet formed a business judgment regarding the financial ability of the Objectors to pay the balance over time.

It might be that, if allowed the opportunity to engage in negotiations with George, the Trustee would form a business judg-

---

4. In the Chapter 11 context, a court has held that a debtor-in-possession could not enter into an agreement with a "no shop" clause, preventing the debtor from actively soliciting or entertaining competing offers with other entities. *Pacificorp Ky. Energy Corp. v. Big Rivers Elec. Corp. (In re Big Rivers Elec. Corp.)*, 233 B.R. 739 (W.D.Ky.1998). The bankruptcy court ruled that the agreement violated public policy because the "no shop" clause interfered with the debtor's fiduciary obligation to maximize the estate's value. The district court affirmed on this issue, noting that "[t]his prohibition violates the underlying policy of the Bankruptcy Code to maximize the value of the estate for the creditors by stifling the bidding process for the assets of the debtor." *Id.* at 753.

ment that Michael's existing bid is in the best interests of the estate. Alternatively, he might determine that George's bid is superior. He might decide to hold an auction for the Assets, as a whole, or piecemeal, allowing former clients to bid on their own files. Regardless, the Court is confident that the estate would benefit from a more competitive and complete bidding process.

Following the guidance of *Broadmoor* and *Landscape Properties*, this Court declines to choose between the two bidders. But it appears that a higher and better offer is available. While the Court cannot say with certainty that George's offer is a better offer, it is not required to make such a finding at this stage. More than a mere possibility of a better offer exists. And the Court can say with certainty that the Trustee has not yet adequately marketed the Assets. Because the Objection to the settlement agreement makes an unsolicited, higher offer for assets that the Trustee did not market, and because that higher offer has not been pursued, negotiated or developed, this Court cannot find that the Trustee has properly exercised his business judgment in presenting the Motion. Accordingly, it cannot approve the Motion.

## III. CONCLUSION

For the foregoing reasons, the Court SUSTAINS the Objection. The Trustee's Motion is hereby DENIED.