In re Joseph Cornelius DONOHUE and Roberta Louise Donohue, Debtors.

No. 09–20490.

United States Bankruptcy Court,
D. Kansas.

Aug. 12, 2009.

Carl R. Clark, Jeffrey A. Deines, Lentz Clark Deines PA, Overland Park, KS, for Debtors.

**ORDER GRANTING JRC OIL COMPA-NY, INC.'S MOTION TO SET ASIDE AGREED ORDER ON TRUSTEE'S COMPROMISE WITH XENIA CORPORATION REGARD-ING DEBTORS' INTEREST IN ROSELL RANCH, LLC**

ROBERT D. BERGER, Bankruptcy Judge.

JRC Oil Company, Inc. ("JRC"), moves for reconsideration of an Agreed Order on

Trustee's Compromise with Xenia Corporation Regarding Debtors' Interest in Rosell Ranch, LLC (the "Agreed Order"). JRC's motion is granted.

## Facts

Debtors filed for Chapter 7 relief on February 28, 2009. Debtors scheduled approximately $2.5 million in assets and estimated approximately $15 million in liabilities. Debtors own Rosell Ranch, LLC. Rosell Ranch owns 478 acres in Anderson County subject to an Installment Real Estate Sales Contract with Xenia Corporation. Xenia is Rosell Ranch's sole creditor. Debtors' schedules stated a value of $480,000.00 for the 478 acres and reported Xenia's claim to be $397,603.00. Thus, from the schedules, Debtors (through Rosell Ranch) stated they owned approximately $82,400.00 in equity. Debtors' schedules stated their intention to surrender the property to Xenia.

On April 30, the Chapter 7 Trustee filed an application for approval of a compromise with Xenia regarding the Rosell Ranch property. The agreement provided Rosell Ranch would cancel the contract for deed and terminate its equitable interest in the property in exchange for $30,000.00 paid by Xenia to the estate. Xenia would also pay $5,000 for triticale growing on the property and not yet harvested. The Trustee filed the settlement documents. The contract for deed, although cited, was not attached.

On May 18, three individuals sharing the last name of Rockers [1] filed an objection stating the compromise was not in the best interest of the estate and the real estate should be auctioned to the highest bidder. The Rockers stated their desire to bid on

the property but did not state the proposed bid amount. Subsequently, the Rockers formed R Three Enterprises, and the newly formed entity negotiated with Xenia and the Trustee to purchase the property.

On June 17, the Trustee, counsel for Xenia, and counsel for the newly formed R Three Enterprises appeared in Court. This particular hearing date had been noticed as the hearing on the original application to approve the compromise with Xenia. Instead, the Trustee announced a new compromise. R Three Enterprises and Xenia agreed to enter into a new contract for deed. The Trustee agreed to cancel Rosell Ranch's contract for deed and terminate Rosell Ranch's equitable interest in the property in exchange for R Three Enterprises's payment to the estate of $50,000.00. R Three Enterprises also agreed to pay the estate an additional $15,000.00 to purchase the triticale, which had been cut and stored in the trench silos on the property. Harvesting the triticale had cost the estate $25,000.00. The Trustee had also paid $2,000.00 in taxes. The agreement required the Trustee to bear the harvesting expense and the taxes, so R Three Enterprises's total offer of $65,000.00 actually netted the estate about $8,000.00 more than Xenia's offer, according to the Trustee.[2] The Trustee had surrendered possession of the property to R Three Enterprises on June 5 prior to court approval for additional planting. The Trustee stated he had noticed the original $35,000.00 compromise with Xenia and only the Rockers had objected. Since the estate was receiving an additional $3,000.00 to 8,000.00 over the original compromise amount, the Trustee requested he

---

1. Apparently the Rockers hold an ownership interest in The Bank of Greeley, which is a creditor in this case.

2. According to the numbers provided by the Trustee, it appears R Three Enterprises's offer only delivered $3,000.00 more to the estate over Xenia's offer.

be excused from further noticing the agreement with R Three Enterprises to the creditors. The Court granted the request and the motion as amended on the record because there did not appear to be any other parties interested in the property, and the Trustee had presented a reasonable business justification for accepting the higher offer.

On June 23, the Court entered the Agreed Order as drafted and submitted by the parties. The Agreed Order set out the new agreement with R Three Enterprises. The Agreed Order is the first written notice of the sale of the Rosell Ranch property to creditors. The Agreed Order provides: "Notice of this Order is not required since the estate is receiving funds in excess of the Trustee's original application for intended compromise."

On July 3, JRC filed a motion to reconsider. JRC owns one-half of the oil and mineral rights located on 160 acres of the Rosell Ranch property and are currently drilling on the site pursuant to an oil and gas lease.[3] JRC objected to the proposed sale because it was not noticed to JRC or anyone else. JRC claims it would have offered $150,000.00 for the property and offered to pay R Three Enterprises's reasonable expenses to reopen the bidding. JRC claims the property is worth $700,000.00. JRC argues the notice of compromise was defective because it did not mention the extensive waterflood and oil-producing activities on the property; the contract for deed was never filed or adequately described; and the original motion made it impossible for anyone unfamiliar with the property to evaluate the value of the asset being disposed of by way of compromise. In support of JRC's last point, Lyons State Bank, the Debtor's primary secured lender, appeared at the hearing on JRC's motion to reconsider and supported the argument the property had been significantly undervalued.

R Three Enterprises and the Trustee jointly resist the motion to reconsider saying JRC has no standing to object because it is just a potential bidder and not a creditor.

### Discussion

JRC filed its motion within 10 days of the Agreed Order. Federal Rule of Civil Procedure 59 incorporated by Fed R. Bank. P. 9023 provides the bankruptcy court may "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." A motion to reconsider is the Court's opportunity to (1) correct manifest errors of law or fact; (2) review newly discovered evidence; or (3) review a prior decision in light of a recent change in the law.[4] Also relevant to this case, a "court of equity may set aside an order of sale either before or after confirmation when it appears that the same was entered through mistake, inadvertence, or improvidence."[5]

### A. Authorizing a Compromise or Approving a Sale

As a threshold matter, the Court addresses whether it is reconsidering an order approving a compromise or a sale. The Court must determine whether a compromise is fair and equitable and in the

---

**3.** JRC's interest in the property pre-dates both Xenia's and Rosell Ranch's interests. Rosell Ranch received no income from the lease. The proposed conveyance to R Three Enterprises would be subject to JRC's 1923 lease and 1994 warranty deed.

**4.** *In re Sunflower Racing, Inc.*, 223 B.R. 222, 223 (D.Kan.1998).

**5.** *Webster v. Barnes Banking Co.*, 113 F.2d 1003, 1005 (10th Cir.1940).

best interest of the estate.[6] Similarly, the sale of property other than in the ordinary course of business requires a sound business reason benefitting the estate.[7] When the compromise of a claim amounts to the sale of an estate asset, both the sale provisions under 11 U.S.C. § 363 and Rule 6004 and the compromise provisions of Rule 9019(a) are implicated.[8] When confronted with a motion to approve a compromise, the Court may consider whether the property of the estate being disposed of in the settlement might draw a higher price through a competitive process and be the proper subject of a § 363 sale.[9] In *Mickey Thompson*, the trustee attempted to compromise several claims for fraudulent conveyances with the parties who allegedly engaged in the conveyances for $40,000.00. A creditor offered $5,000.00 more to purchase the claims from the estate.[10] The trustee, thinking he was bound by the original compromise, did not pursue a sale. On appeal, the Bankruptcy Appellate Panel reversed and found the settlement was really an asset sale because the original settling parties had no counter claims to release against the estate. Because the transaction was really a sale rather than a compromise, the court had to consider, as part of the fair and equitable analysis, whether the asset could draw a higher price through competitive bidding.[11] "Whether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation." [12]

■ The Court finds the Agreed Order was a sale order. However, at the time of the hearing, the dynamics of this particular situation did not seem to call for a more formal sale procedure. The Trustee began the process with an attempt to resolve the Debtors' equity with the secured lender, Xenia. The Rockers' objection resulted in a higher price. The Court finds the Trustee's decision to continue on the course of seeking approval of a so-called compromise was a course he believed to be fair and equitable and in the best interest of the estate because he increased the return to the estate in the apparent absence of any other objection from creditors. At the time of the hearing, the record indicated the Debtors believed Rosell Ranch held approximately $80,000.00 in equity. Factoring in the accruing harvesting expenses and taxes, the Trustee presented what he thought was the best outcome at the time and stated a reasonable business justification for his action. However, in retrospect, the Trustee conducted a private sale of an estate asset without the protections afforded by § 363 and Rule 6004. In retrospect, the Court believes these protections would have brought a higher price to the estate for the benefit of creditors, making the Agreed

---

6. *In re Western Pacific Airlines, Inc.*, 219 B.R. 575, 579 (D.Colo.1998).

7. *In re Simon Transp. Servs., Inc.*, 292 B.R. 207, 216 (Bankr.D.Utah 2003); *In re Psychrometric Systems, Inc.*, 367 B.R. 670, 674 (Bankr.D.Colo.2007).

8. *In re Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415, 421 (9th Cir. BAP 2003), citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394–95 (3rd Cir.1996).

9. *Id.*

10. *Mickey Thompson* involved the sale of Chapter 5 causes of action. *Mickey Thompson* is the minority view as to whether Chapter 7 trustees can sell Chapter 5 causes of action. In this case, the asset is real property which is unquestionably within the trustee's power to liquidate for the highest price, so whether the asset is a proper asset for a § 363 sale is not in question here.

11. *Mickey Thompson*, 292 B.R. at 421–22.

12. *Id.* at 422.

Order the proper subject of a motion to reconsider.

## B. Standing

■■■ R Three Enterprises's and the Trustee's objection to JRC's standing is without merit even though JRC was not a party to the Agreed Order. Courts properly hear a potential bidder's challenge to a bankruptcy sale when the notice is shown to have been deficient, and the sale price falls below what might have been expected in a properly noticed sale.[13] Standing is conferred on a party challenging a judicial sale on equitable grounds related to the intrinsic structure of the sale.[14]

## C. Standard for Setting Aside a Sale Order

■■■ Where the notice of a sale is insufficient, a confirmed sale will be set aside.[15] In the Tenth Circuit,

> A court of equity may set aside an order of sale either before or after confirmation when it appears that the same was entered through mistake, inadvertence, or improvidence.

> While a judicial sale will not be set aside on the ground of inadequacy of price alone, unless the inadequacy is so great as to shock the conscience of the chancellor, inadequacy of price, accompanied with other circumstances having

a tendency to cause such inadequacy, or indicating any apparent unfairness or impropriety, will justify setting aside the sale. Such additional circumstances may be slight and insufficient in themselves to justify vacating the sale.[16]

The most frequent mistake held to warrant vacating a confirmed sale is defective notice.[17] Improperly noticed sales have been shown to bring an inadequate purchase price.[18] Post-confirmation bids can give an indication of what might have been obtained at a properly noticed sale. In *Mason*, the Tenth Circuit vacated a confirmed sale when the post-confirmation bid was 35 percent higher than the confirmed bid, and the creditors received no notice of the sale, rendering the sale "wholly illusory."[19] Defective notice and a post-confirmation offer significantly larger than the confirmed sale price justifies vacating a confirmed sale.

■■■ In this case, creditors did not receive notice of the actual sale until the Agreed Order was entered. A post-confirmation bid more than doubled the confirmed sale price. JRC has shown defective notice and a post-confirmation offer exceeding the sale price by 130 percent. The lack of notice prior to the private sale coupled with an inadequate purchase price justifies setting aside the Agreed Order and reopening the bidding process.

---

**13.** *In the Matter of The Harwald Co.*, 497 F.2d 443, 444–45 (7th Cir.1974); *In the Matter of Chung King, Inc.*, 753 F.2d 547, 551 (7th Cir.1985); *Mason v. Ashback*, 383 F.2d 779, 780 (10th Cir.1967); *Cedar Island Builders, Inc. v. South County Sand & Gravel, Inc.*, 151 B.R. 298, 303 (D.R.I.1993).

**14.** *In the Matter of The Harwald Co.*, 497 F.2d at 444–45, citing *Mason v. Ashback*, 383 F.2d 779.

**15.** *Mason v. Ashback*, 383 F.2d at 780; *In re BCD Corp.*, 119 F.3d 852, 860 (10th Cir.1997);

*In re Simon Transp. Servs., Inc.*, 292 B.R. at 216; *In re American Freight System, Inc.*, 126 B.R. 800, 803 (D.Kan.1991).

**16.** *Mason*, 383 F.2d at 780 (quoting *Webster v. Barnes Banking Co.*, 113 F.2d at 1005).

**17.** *In the Matter of Chung King, Inc.*, 753 F.2d at 551.

**18.** *Mason*, 383 F.2d at 780.

**19.** *Id.*

The Agreed Order is vacated. The sale to R Three Enterprises is ordered to be undone. The Trustee is ordered to proceed with a § 363 sale of Debtors' interest in Rosell Ranch, LLC. The Court will take up R Three Enterprises's claim for damages at a later date to be requested by the parties. Any such claimed damages shall not have accrued prior to the July 23 Agreed Order as any actions taken by R Three Enterprises prior to the Agreed Order were taken without reasonable reliance on the sale's finality.

IT IS SO ORDERED.